THE STATE, RUPERT SCHEFBAUER AND JESSE CARVER, PROSECUTORS, v. THE BOARD OF TOWNSHIP COMMITTEE OF THE TOWNSHIP OF KEARNEY, IN THE COUNTY OF HUDSON, AND GEORGE F. WOOLSTON.

1. The act of the legislature entitled "An act authorizing the lighting of public streets and places in the cities, towns, townships, boroughs and villages of the state, and to erect and maintain the proper appliances," approved May 22d, 1894 (*Pamph. L., p.* 477), confers upon the township committees of the respective townships of this state general power over the matters of the lighting of streets and public places in said townships, and under this act the township committees are authorized to enter into contracts to light the streets with gas, electric lights or otherwise, for a term not exceeding five years, and to cause the annual expense thereof to be raised by taxation the same as the expense for the working and repairing of roads and streets is raised.

2. This act of May 22d, 1894, is applicable to the township of Kearney, in the county of Hudson, which was created and incorporated by an act entitled "An act to set off from the township of Harrison, in the county of Hudson, a new township to be called the township of Kearney," approved March 14th, 1867 (*Pamph. L.*, p. 253), and upon which, under the corporate name and title of "The Board of Township Committee of the Township of Kearney," additional powers were conferred by virtue of the provisions of an act entitled "An act for the improvement of the township of Kearney, in the county of Hudson, and to increase the powers of the township committee in said township," approved April 4th, 1871 (*Pamph. L.*, p. 1371), and under these laws and the act of May 22d, 1894, the board of the township committee of the township of Kearney is the municipal authority authorized to act in the matter of lighting the streets and public places of that township with gas, electric lights or otherwise.

3. In the exercise of the power of lighting the streets of the township under these laws, the board of township committee is not bound to award a contract, where the street lighting is done by contract, to the lowest bidder for such work, but they are bound to exercise the power in a *bona fide* manner, and with reasonable discretion and judgment for the benefit of the township, basing such reasonable discretion upon a rational basis of fact in its support. When the determination of the board is upheld by such rational basis of fact, the court will not decide disputed facts or weigh evidence in order to review the action of the board in awarding contracts of the class in question.

On *certiorari*.

Argued at November Term, 1894, before Justices DIXON, MAGIE and LIPPINCOTT.

For the prosecutors, *Edward Kenny*.

For the defendant, *Joseph Parker, Jr.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This writ brings up for review the proceedings and resolutions passed by the board of township committee of the township of Kearney, in the county of Hudson, on the 14th day of August, 1894, whereby a contract was awarded to one George F. Woolston for lighting the streets of said township of Kearney for a term of five years, with electric arc lights.

The prosecutors, one of whom is an unsuccessful bidder for the contract and the other a tax-paying citizen of the township, contest the validity and legality of the award of this contract to Woolston, and the primary grounds upon which they assail the proceedings are that the board of township committee of this township is not authorized at all to contract in the matter of the lighting of the streets of the township, or if so authorized, then they have no power to make such contract for such a length of time as five years.

The board of township committee, on the 12th day of June, 1894, by resolution directed the clerk to advertise for a contract for street electric lighting for a term of five years, and that bids would be received by the board on July 10th, 1894. Bids were then received from three bidders, including bids by Schefbauer and Woolston. These bids were opened on July 10th, 1894, and referred to the lighting committee of the board. On August 14th, 1894, the committee on lighting reported, recommending the award of the contract to Woolston, and on August 28th, 1894, by resolution, the board so awarded the contract.

The prosecutors, before the contract was executed, sued out this writ of *certiorari* to review the proceedings and the award of the contract.

The question of the extent of the power of townships generally over this matter, and the power of the board in this township, must be first discussed and determined.

The township of Kearney was incorporated by an act of the legislature entitled "An act to set off from the township of Harrison, in the county of Hudson, a new township, to be called the township of Kearney," approved March 14th, 1867. *Pamph. L., p.* 253. This act, by its express provisions, conferred upon the inhabitants all the rights, powers, privileges and advantages to which the inhabitants of the other townships in the state were entitled or subject by the laws of this state.

By the general law, entitled "An act incorporating the inhabitants of townships, designating their powers and regu-

lating their meetings" (*Rev.*, *p.* 1191), approved April 14th, 1846 (*Nix. Dig.*, *p.* 975), it was provided that the inhabitants of each of the several townships of this state were constituted a body politic and corporate in law, as theretofore constituted and established, by the name of "the inhabitants of the township of ———, in the county of ———."

By the eleventh section of this act the persons qualified to vote at town meetings were empowered at their annual meeting, or at any other meeting duly held for the purpose, to vote, grant and raise such sum or sums of money for the maintenance and support of the poor, the building and repairing of pounds, the opening, making, working and repairing of roads and keeping them in order,  *  *  *   and prosecuting or defending the common rights of such township, and for other necessary charges and legal objects and purposes thereof, as are or shall be, by law, expressly vested in the inhabitants of the several townships of this state by this or some other act of the legislature.

By the twelfth section of this act the township committees were authorized to superintend the expenditure of any moneys raised by tax for the use of the township.

It will be observed that the power to repair roads and keep them in order was one of the principal objects of the incorporation of townships, and it would seem quite conclusive that the power to light the roads, wherever in the township it became necessary for public safety or convenience, could be exercised whenever the voters of the township, through the forms of law, chose to grant and raise money for that purpose, to be expended under the superintendence of the township committee, and that the township committees were the municipal authorities authorized to act in such matters after such grant of money had been made for the purpose. The power to repair and keep in order roads would certainly, by necessary implication, confer the power to light a road, or portion of it, when necessary, and it is a power which has been exercised by township committees to a certain extent ever since the creation of such political subdivisions as town-

ships. It would be a necessary charge, and it would constitute a legal object for the good of the public within the power of these political organizations. The only restrictions upon the part of the township committee, in an expenditure for this purpose, would be, that it must be preceded by a resolution or order by the voters of the township of a tax for that purpose, which resolution or order could also, by its terms, provide the time and mode in which the township committee should exercise its power. Without the order for the tax, the committee would be invested with no power whatever over this or any other class of township expenditure, but when the tax is ordered raised for this purpose, and no other agents of the township appointed by the town meeting, or town electors, the power to make expenditures for this purpose fell upon the township committee. The township committees are the agents of the township so far as their acts within the provisions of the law are concerned. *Demarest* v. *New Barbadoes,* 11 *Vroom* 604.

Under the eleventh section of the General Township act, it is concluded that whenever it became necessary for public safety or convenience to light any road, street or part or parts thereof, in a township, it was within the power of the voters to grant and raise by tax a sum of money sufficient for that purpose, as one of the legal objects of incorporation, to be expended under the superintendence of the township committee, who were the legal body authorized to act in the matter. I think the power falls within the reasonable interpretation of the General Township law, and within the principles established by the few cases in this state in which the powers of incorporated townships and their township committees have been discussed.

The power of lighting roads within the townships is not conferred upon any other corporate body exercising municipal authority within the township, and by a fair, reasonable and necessary implication it arises out of the very nature of the objects and purposes of the township governments as provided by the general laws. The power must be exercised by the

municipal authority with reasonable discretion, within the narrow bounds of the legislative grants of authority to townships. I do not think it can be denied that municipal authority, having exclusive power of repair and keeping in safe condition the streets or roads, also have the power, by necessary implication, for the public convenience and safety to light such streets or roads. 2 *Dill. Mun. Corp.* (*4th ed.*), *p.* 822, § 691 (546), and cases cited in note.

The township powers to be exercised, like those of any other public municipal corporation, are those granted in express words, those necessarily or fairly implied in, or incident to, the powers expressly granted, and those essential to the declared objects and purposes of the corporation. 1 *Dill. Mun. Corp.* (*4th ed.*), § 89, and cases cited. For powers of townships and township committees, see *Bradley* v. *Hammonton,* 9 *Vroom* 430; *Atlantic City Water Works* v. *Smith,* 18 *Id.* 473. The township committee, when indictable for not keeping highways in good order and repair, can file a bill in their own name to restrain shutting up such highways or rendering them impassable. *Inhabitants of Greenwich* v. *E. & A. R. R. Co.,* 9 *C. E. Gr.* 217; *S. C.,* 10 *Id.* 565. The appropriation or grant of money by the voters must, of course, precede or be in advance of the obligation or the expenditure, unless otherwise provided by law. *Township of Wayne* v. *Cahill,* 20 *Vroom* 144; 26 *Am. & Eng. Encycl. L., p.* 98, *tit. "Towns and Townships;"* *Rulon* v. *Woolwich,* 26 *Vroom* 489.

The power of the township committee to act would depend upon whether the voters of the township had voted any sum or sums of money as an annual expenditure for such an object or purpose. When this condition was complied with, or otherwise provided for, then the township committee was the municipal body authorized to act in the matter of the superintendence of the expenditure called for.

By the provisions of "An act for the improvement of the township of Kearney, in the county of Hudson, and to increase the powers of the township committee in said township," approved April 4th, 1871 (*Pamph. L., p.* 1371), other

and greater powers, rights and privileges were conferred upon the township committee than were conferred upon township committees in and by virtue of the provisions of the general law incorporating townships, to which reference has been made.  The corporate name of the township, by this act, was designated as "The Board of Township Committee of the Township of Kearney."  The powers conferred were as ample as those conferred upon an ordinary city government.  By this statute the township, as a body politic, was possessed of all the powers conferred by the general laws governing townships, and not in conflict with the increased powers under the act of 1871 and such increased powers as were conferred by that act.  Under this act of 1871 it was provided that "The Board of Township Committee of the Township of Kearney" should have all the powers of a municipal corporation necessary for carrying out the objects and purposes of the act; it could have a common seal, alterable at pleasure, and by its title it could sue and be sued in any of the courts of this state, and by this title it was empowered to make contracts, agreements and regulations, and pass, alter and repeal ordinances for the purpose of carrying out the objects and intentions of this act.  By the eleventh section of this act the board of township committee was vested with power to pass, enforce, alter and repeal ordinances to take effect in said township of Kearney, to lay out, open, widen, vacate, alter grade, fill up, refill, establish, alter and regulate the grade and grading of all streets, avenues and roads, side and cross-walks, to ascertain and establish the boundaries of all streets and public roads in the township, and to authenticate all said improvements by maps or otherwise; to pave, macadamize, grade, curb and gutter the streets, avenues and roads; to construct and build sewers, drains and culverts, and other necessary passages for water; to lay sidewalks of stone or other materials, and to lay out cross-walks of stone; to set and reset the curbs and gutters in the streets and roads, or any part thereof.  The power was also conferred on this board to lay and regulate, or prohibit, the laying of water or

gas-pipes in or under the streets or roads, or any part thereof; to declare what shall be considered nuisances, to prevent and remove all obstructions and nuisances in and upon any street, road, place or places in said township, and to secure in every respect to the public and to the adjoining owners the safe and convenient use of all streets, sidewalks and public places for the purpose for which they were or might be laid or dedicated in said township. Various other and extensive powers were granted to the board of township committee by this act of 1871, as fully and as ample as those which are generally provided for the ordinary city municipal government; and from time to time, since 1871 up to the present time, additional powers have been, by both special and general laws, extended to this governing board of this township to meet the needs and exigencies of the rapidly increasing population thereof.

One of the first objections made to the awarding of this contract for electric arc lighting is, and the insistment is strenuously made, that there is not vested in the board of township committee of the township of Kearney any right by virtue of any legislative authority to act at all in the matter of the lighting of streets in such township.

I think, by the references already made, and a review of the powers and privileges conferred upon the incorporated townships under the general law, by the title of the inhabitants thereof, and upon the township committees thereof, it is clearly demonstrated that whenever and wherever it be necessary for the public good, and public needs require the lighting of the streets and roads, the power can be exercised under these general laws, and that the township committee is the municipal authority with power to act in the premises.

But even if this contention be not good, still it is difficult to perceive how the power can be denied to this board under the provisions of the act of 1871. Under this act of 1871 ample power is given to lay out and improve streets, to regulate the use of the same, remove obstructions therefrom, lay out sidewalks thereon, and to do and perform every other act

in relation to such public streets which a municipal corporation like that of a city would or could be authorized to do under any charter of incorporation. It is true there is no express power granted to this board to light the streets, but the power to lay out streets, to make them accessible to the public, and to adjoining property-owners, and to render them safe and convenient for public use and public travel, and to lay gas pipes in the street, certainly carries with it as a necessary incident the power whenever it is deemed necessary for the public good to light them. This board is not only entitled to exercise the powers which are expressly granted to it, but also such as are necessarily incident thereto in order to fully exercise the powers expressly granted. It chose to become incorporated under the name of "The Board of Township Committee of the Township of Kearney," but it is no less a municipal corporation than if it had been incorporated under the name of the city of Kearney. All this depends upon the chartered powers and privileges which it is entitled freely to exercise for the public good, and in the execution of these powers it is entitled to appropriate and raise money by taxation without any other limit than the public necessity.

It may, therefore, be concluded that there was vested in the board of township committee of the township of Kearney power to light the streets within the township limits, and to provide ordinary, reasonable and ample appliances for such lighting. And there can be no dispute in this matter but that the board here referred to was the board, and the only board, authorized to act in such matters from time to time, by ordinance, resolution, contract or agreement, in accordance with the provisions of the township charter.

By an act of the legislature entitled "An act authorizing the lighting of public streets and places in the cities, towns, townships, boroughs and villages of the state," passed June 1st, 1886 (*Pamph. L., p.* 389), the common council, township committee or other municipal authorities of any city, town, township, borough or village in this state were authorized from time to time, by ordinance or resolution, to order and

cause any public street or streets, place or places, or any part or parts thereof in any city, town, township, borough or village to be lighted with gas or otherwise, with full power to make or enter into contract or contracts with any other party or parties in relation to the matter, and to appropriate money by taxation to bear the expense of such lighting.

It is hardly necessary to say anything in relation to this act, except to refer to the fact that it applies to all cities, towns, townships, boroughs and villages, and confers the power upon the different municipal authorities in each of these subdivisions to act in such matters; and to add that in townships the power is conferred upon township committees, by contract or otherwise, to light the streets with gas or otherwise. This act necessarily limits the exercise of this power within the annual appropriation for such expenditure, and gives no power to contract for more than a period of one year, but the appropriation for such purpose need not precede the contract for such lighting.

By a supplement to the general act of incorporation of townships, approved April 14th, 1846, which supplement was approved May 17th, 1894 (*Pamph. L.*, *p.* 434), the township committee or board of commissioners within any township of this state, having authority to procure and supply lights for lighting the public streets, were empowered to make a contract with any person or corporation for the supplying of such lights for a year or term of years, which contract when so made shall be lawful and valid, and the moneys payable under said contract in each year shall be levied and raised by taxation in the annual tax levies of such year, provided that no such contract shall be made for a longer period than five years.

By an act entitled "An act authorizing the lighting of public streets and places in the cities, towns, townships, boroughs and villages of this state, and to erect and maintain the proper appliances," approved May 22d, 1894 (*Pamph. L.*, *p.* 477), power was conferred upon the common council, township committee or other municipal authorities of any city,

town, township, borough or village in this state authorized to
act in such matters, by ordinance or resolution, to order and
cause any public street or streets, place or places, or any part
or parts thereof, to be lighted with gas, electric lights or other-
wise; and to erect and maintain for that purpose, or cause to
be erected and maintained, all necessary and proper posts,
poles, lanterns and fixtures, and to make and enter into any
contract or contracts with any other party or parties for any
term or terms not exceeding five years, and to cause the
annual expenses thereof, after being ascertained or determined
by resolution or otherwise, to be levied, assessed and collected
in the same manner as taxes for the working and repairing
of roads or streets in such township are or may be levied,
assessed and collected.

All these statutes are referred to in order to show the course
of legislation on this subject of lighting streets and public
places in townships.

Neither under the general law applicable to townships, nor
under the charter of the township of Kearney, passed in the
year 1871, could there exist in the board of township com-
mittee of the township of Kearney any power whatever to
make any contract in relation to the lighting of the streets
and public places of the township for more than a period of
one year.   Neither of these acts would enable the municipal-
ity to enter into any contract for the lighting of streets for a
longer period than they possess the right to make an appro-
priation or the expenses thereof, to be included within the
tax levy, and under the general law applicable to townships,
and the charter of 1871, the board of township committee
could not raise, grant or appropriate any money, or include
any greater sum in the tax levy than was necessary for the
municipal or township purposes for the current year, and
while the power was conferred upon them to provide the
appliances for the same and cause the streets to be lighted,
yet no contracts whatever could be made for any period longer
than one year.

This has been the contention of the prosecutors, and it may,

for the purposes of this case, be conceded. But whether this be so or not, this power to contract for a longer period is clearly found in the act of 1894. We have already concluded that under the General Township act, or under the statute of 1871, applying especially to this township, or under the general law of 1886, the township committee, or the board of township committee of this township, was the municipal authority authorized to act in such matters as the lighting of the streets by gas or otherwise, and by the act of May 22d, 1894 (*Pamph. L., p.* 477), the power is extended to lighting, with "gas, electric lights or otherwise." By the true interpretation of the act of May 22d, 1894, the words "authorized to act in such matters," as used in this statute, plainly refer to such boards as are provided for in the different and differing municipal charters having such matters in charge. This statute is a general grant of power to all cities, towns, townships, boroughs and villages to light the streets with gas, electric lights or otherwise, but conferring the exercise upon the appropriate municipal authorities within the municipalities; as in case in a municipality where one board is authorized to act in educational matters, and another board has power over streets and public places and the lighting of the same, the latter would be the authority having in charge such matters, and would exercise the power conferred by the statute.

Thus, the board of township committee of the township has, by these statutes, authority to act in the matter of lighting the streets of the township; and a mere reference to the statutes of May 17th, 1894, and the statute of May 22d, 1894, disposes at once of the objection that no power existed in the board to enter into a contract for such lighting for the term of five years.

Upon this subject both these statutes expressly confer this power upon the board of township committee, and the only argument advanced against the exercise of the power is that the expense is to be estimated and raised by taxation annually. But this is no answer to the express terms of, and the express

grant of power in, the statute. The contract is for five years, and the expense of the contract is to be raised by taxation annually. This is the annual expense under the contract. There is nothing incongruous or inconsistent in these provisions. In fact, it is a safeguard against extravagance. The power is not given to issue bonds and thus burden the municipality, but the expense as it is incurred, or about to be incurred, or after it is incurred, is placed in the tax levy. This grant to place the expense annually in the tax levy, was entirely within the exercise of legislative power, and so was the power to create a contract extending over a period of five years. These things were entirely matters of legislative wisdom and discretion, and being found in the legislative grant of power, can be exercised by the municipality upon which it is conferred.

In the examination of the return to this writ, it appears that the board of township committee of the township of Kearney conformed to the formal directions of the statute in their proceedings and award of the contract to Woolston for the lighting the streets of the township with electric lights. The resolutions of the board to light the streets of the township with electric lights were in accordance with the statute. Proposals were advertised for, in accordance with these resolutions, for the lighting of the streets of the township for five years with electric arc lights, and in accordance therewith. At the time appointed, proposals and communications were received from three parties, representing the different systems of electric arc lighting. These were opened in a public manner, on July 10th, 1894, the time appointed, and referred to the lighting committee of the board. After much examination of the question, and after all the parties were heard upon the subject—notably the prosecutor in this case, who was a bidder for the contract—on August 14th, 1894, the lighting committee reported to the full board, recommending that the contract be awarded to Woolston, and on August 28th, 1894, formal resolutions to that effect were passed.

The objection of the prosecutors to the action of the town-

ship committee in the award of the contract is that it was not awarded to the lowest bidder. There can be no force in this objection. In the exercise of the power conferred upon them in this matter, they were not required to award the contract to the lowest bidder. The authority to enter into this contract was a general one, and not limited and restrained in any manner in this respect, and if they exercised the power in good faith, in a *bona fide* manner, without abuse or corruption, then the court cannot interfere with the exercise of their judgment in the matter. They were not to exercise an arbitrary discretion, and over such an exercise of power the court would have ample control in order to defeat fraud or injustice, and to protect the public from the abuse of the power conferred, and from extortion and imposition. But if they exercised the power conferred upon a substantial and rational basis of fact, in good faith, in a *bona fide* manner, then the discretion or judgment, whichever the act may be called, cannot be interfered with by the court. The legislative power to make this contract was conferred upon this body and not upon the court. They exercised the power, and whilst it may have been exercised in a different manner, or with a different discretion, from that which the court would have exercised, that alone furnishes no ground for nullifying their action. The power to be exercised, and the restraints of it, are matters of legislative jurisdiction. The abuse of the power, contrary to common justice, becomes cognizable in the courts for correction. *Booth* v. *Bayonne,* 27 *Vroom* 268 ; *State, Lewis, pros.,* v. *Board of Chosen Freeholders, &c.,* 8 *Id.* 254. Where the power to contract is general in a municipal corporation, and it is not restricted to an award to the lowest bidder, the contract may be awarded upon other circumstances than the mere price proposed. *Shaw* v. *Trenton,* 20 *Vroom* 339, 341 ; *McGovern* v. *Trenton, ante p.* 580, and cases cited.

If there be a dispute upon the facts in the case as to the question who was the lowest bidder, the determination of the board, made in good faith, would be upheld if there were any

facts in the matter affording a rational basis for such determination; and therefore if, upon the evidence, there exists a dispute upon this question, the court will not determine its weight in order to reverse the determination of the municipal authority having the subject-matter within their discretion.

But a careful examination of this evidence does not reveal that Woolston was not the lowest bidder, and if that is a reason for setting aside the proceedings it ought clearly to appear. It will be observed that the advertisement for proposals was for bidders to estimate separately on lights for this electric arc lighting of twelve hundred and two thousand-candle power, and on from eighty to one hundred and twenty-five lights required. The bids of the Excelsior Electric Company and the bid of Woolston were in accordance with the advertisement. The bid of the Excelsior Electric Company clearly appeared to be much higher than that of Woolston, and, therefore, was not considered. The bid of the prosecutor Schefbauer was clearly not in accordance with the advertisement. He bid two and one-half cents per light of two thousand-candle power per hour, or $100 per year, and two cents per light of twelve hundred-candle power per hour, or $80 per year, and this estimate was based, as he expressly stated in the proposal, upon four thousand hours of light per year. Woolston's bid was "for full 2,000-candle power lights, twenty-nine and one-half cents per light per night." * * * "For full 1,200-candle power lights, twenty-seven cents per light per night."

Upon these bids of Woolston and Schefbauer there ensued an examination, and evidence of experts and others as to which would be the cheapest for the township to contract with, was laid before the township committee. It has been observed that Schefbauer's bid was indefinite, and there has been an endeavor to show by calculation that his system would be cheaper for use than that of Woolston, and from that point the evidence drifted into a discussion of experts and others upon the respective merits of the different systems of electric arc lighting. The merits of the direct current

and the alternating current systems, respectively, have been elaborately dwelt upon, and the differences and advantages of the one system over the other have been extended, until it is a difficult task for the ordinary mind to determine whether one single fact in relation to the merits of the different systems has been established. Upon an examination of the evidence, if I was called upon to determine the matter, I should find, as it appeared to the board of the township committee at the time of the awarding the contract, that Woolston's bid was the one in accordance with the advertisement, clear and distinct in proposal, and the lowest bid, in terms, for the supply of light required. It is clearly so unless an abstract calculation is entered upon, based upon a proposal or bid ambiguous in its terms and not in accordance with the advertisement. But we are not called upon here to determine, accurately, which was the lowest bid, and we go no further than deciding that this was a question of judgment for the township board to determine, and that they did so upon facts tending to show that their conclusion was one to which they could reasonably arrive, and one to which they arrived in good faith, in a *bona fide* manner.

The proceedings here brought up for review rested in the honest judgment and discretion of the board, based upon a rational basis of fact before them, and the questions of advantage to the municipality and of expediency were for them to determine.

The proceedings and award of the contract will be affirmed, with costs against the prosecutors.