UTAH SAVINGS & TRUST COMPANY, v. SALT LAKE CITY et al.

No. 2544. Decided February 3, 1914 (138 Pac. 1165).

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—NECESSITY OF CONTRACTS. Comp. Laws 1907, sec. 286, empowers the board of public works of first-class cities to make contracts for the city for all such works and improvements "as may be ordered by the council," providing that all such contracts shall be subject to the approval of the council, to superintend the performance except as to the construction of public buildings, and further requires the board to approve the estimates of the city engineer of the value of the work, to accept any work done or improvements made, subject, however, to the approval of the council; and section 313x1, provides that no contract of any city for any public improvement shall be awarded except to the lowest responsible bidder after publication of notice. *Held*, that a first-class city, such as Salt Lake City, could not construct a dam for a water supply without entering into contracts therefor, with notice, etc., as provided.[1] (Page 154.)

[1] Nelden v. Clark, 20 Utah, 382, 59 Pac. 524, 77 Am. St. Rep. 917.

2. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—PROCEEDINGS. Municipal authorities may meet an existing emergency by having work done without complying with the charter provisions relating to municipal contracts, requiring advertisements for bids, etc.; but, to sustain their action, it must appear that the emergency was such as to prevent compliance with such provision. (Page 158.)

3. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—REGULATION BY STATUTES—CONSTRUCTION OF WATERWORKS. The fact that a city will operate its waterworks in its private, and not in its governmental, capacity will not authorize it to make improvements on its waterworks without making contracts for that purpose pursuant to Comp. Laws 1907, secs. 286, 313x1, requiring the city authorities to make contracts for the erection of all improvements ordered by the council; and prohibiting the award of any contract except to the lowest bidder, etc. (Page 159.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Utah Savings & Trust Company against Salt Lake City and others.

Judgment overruling a demurrer to the complaint. Defendants appeal.

AFFIRMED.

*H. J. Dininny, Aaron Meyers* and *W. H. Folland* for appellants.

*Dey, Hoppaugh & Fabian* for respondent.

FRICK, J.

This action was commenced in the district court of Salt Lake County by respondent, as a taxpayer of Salt Lake City, to enjoin said city and the other defendants named in the title, who are appellants here, from constructing certain improvements. The respondent, after stating the necessary matters of inducement in its complaint, in substance alleged that it is the duty of the board of city commissioners of Salt

Lake City to enter into contracts on behalf of said city for the construction of all public improvements that may be ordered by said board of commissioners; that notwithstanding said duty said board for many months has carried on public improvements without calling for or procuring bids from any one for the construction of said proposed improvements, and without entering into contract with the lowest responsible bidder, or with any one, for the construction of the same. The complaint then continues as follows:

"(4)   That on or about the 22d day of May, A. D. 1913, said defendant Salt Lake City, by and through its board of city commissioners, the defendants herein, resolved and determined to construct certain dams, for the purpose of increasing the water supply of Salt Lake City, at Lake Phœbe and Twin Lakes, situate in the county of Salt Lake, State of Utah, and for that purpose appropriated of the funds of said city the sum of $16,000 for the carrying on of said work. That the improvements aforesaid will, as this plaintiff is informed and verily believes, cost a large sum, to wit, approximately the sum of $60,000, and that the said appropriation of $16,000 is but part of the total amount which will be required for the purpose of making said improvements. That the said defendant Salt Lake City and the said defendant board of commissioners aforesaid threaten and, unless restrained by the order of this court, will perform said work, and erect said improvements, without making any contract whatsoever for the carrying on of said work of the making of said improvements, and without submitting the performance of said work and the construction of said dams to competitive bidders, and that said moneys will be expended through the various departments of said defendant city, without any contract whatsoever.

"(5)   This plaintiff alleges that the work herein referred to is but one of the various improvements now being carried on and in contemplation by said defendant Salt Lake City and said defendants board of city commissioners of said defendant city, without in any manner awarding contracts therefor to the lowest responsible bidder, or any bidder at

all, and without in any manner making contracts for said improvements.

"(6) This plaintiff alleges that the board of city commissioners of said city have not made or entered into any contract for the construction of said proposed dams, or for any of the other public improvements aforesaid. That they have not given notice for bids for the construction of said dams, nor for any of said public improvements, nor in any manner solicited bids therefor, as required by law, or otherwise, or at all. That in violation of law said board of city commissioners has, as plaintiff is informed and believes, delegated the construction of said proposed dams to the city engineer of said defendant city, and it is the intention of said board of city commissioners to pay for the construction of said dams out of the funds appropriated as aforesaid so far as said appropriation will carry on said work, and when said appropriation is exhausted to pay for the further construction thereof from the general city funds, and that, unless enjoined from so doing, the said defendant city, acting through its board of city commissioners as aforesaid and its auditor, one of the defendants herein, and its said treasurer, one of the defendants herein, will pay out of the funds of said defendant city the amount required for the construction of said dams, in violation of law. That in like manner the said defendant city now threatens to carry on other public improvements to wit, the construction of water mains and improvements of like character, without contracts or bids, and by delegating said work to said city engineer, and to pay out the funds of the said defendant city for said improvements, wholly in violation of law."

Upon the foregoing allegations the defendant prayed that the appellants be enjoined from making or carrying on the improvements described in the complaint.

Appellants interposed a general demurrer to the complaint. Upon a hearing on the demurrer the district court overruled the same, and, appellants electing to stand thereon, the court entered judgment permanently enjoining them from carrying on the work mentioned in the complaint, or

from making said improvements without procuring bids therefor, and without entering into contract with the lowest responsible bidder. Appellants have appealed from said judgment, and now contend that the district court erred in overruling the demurrer, and in entering judgment against them as aforesaid.

The principal grounds upon which appellants' counsel rely for a reversal of judgment are:

(1) That, in the absence of some statutory requirement to that effect, a municipal corporation is not required to call for bids and enter into contract for making public improvements; (2) that, under the law of this state, Salt Lake City is not required to call for bids and to enter into contracts to make the public improvements mentioned in the complaint, but it is contended, it can make them under the supervision of its own engineer by days' labor; and, (3) that the legislature in no event can direct the city how it shall do the work in making improvements on its waterworks system, since it owns and operates that system in its private, and not its governmental, capacity.

The first proposition is not disputed by any one. We therefore pass to the second. The source and present status of the laws to which our attention has been directed by both parties are as follows:

In 1890 the territorial legislature passed an act entitled "An act supplementing and amending the charters, and defining, prescribing and regulating the powers, duties and government of cities of the first and second classes." (Laws Utah 1890, p. 54.) That act is composed of fourteen sections, some of which are very long, covering several pages. In section eleven of that act a board of public works was created, and its duties and powers defined. The act of 1890 was, with certain changes, carried into the Revised Statutes of Utah 1898, and from that revision with certain amendments subsequently made, was carried into Comp. Laws Utah 1907 in which compilation said section eleven is divided into four sections numbered 283, 284, 285, and 286. We are not

now concerned with the provisions of the first three sections, but only with those of section 286, which are as follows:

"It shall be the duty of such board of public works, and it shall have power, to make contracts on behalf of the city for the performance of all such work and the erection of all such improvements *as may be ordered by the council,* but all such contracts shall be subject to the approval or rejection of the council; to superintend the performance of all such work and the erection of such improvements, except the supervision of the construction of city halls, market houses, jails, or other public buildings. It shall also be the duty of said board to approve the estimates of the city engineer which may be made from time to time of the value of work as the same may progress; to accept any work done or improvements made, when the same shall be fully completed according to contract, subject, however, to the approval of the council; and to perform such other duties as may be devolved upon them by ordinance." (Italics ours.)

In 1907 the legislature passed an act the title of which, so far as material here, is as follows:

"An act requiring cities, towns and municipal corporations to award contracts for public improvements to the lowest bidders, after publication of notice." (Laws 1907, ch. 20.) Section one of that act, which is section 313x1 of Comp. Laws Utah 1907, provides:

"No contract of any city, town, or municipal corporation for any public improvement shall be awarded except to the lowest responsible bidder, after publication of notice for at least twenty days in a newspaper of general circulation, printed and published in such city, town, or municipal corporation."

In 1911 the legislature of this state created what is commonly known as the commission form of city government. (Laws Utah 1911, p. 224.) That act, among other things, provides:

"The board of commissioners of cities of the first and second class shall discharge, exercise and have all the duties, powers and privileges as are now or may be hereafter pro-

vided by law and are now or may be hereafter vested jointly or severally in the mayor and city council of cities of the first and second class. All the rights, duties, powers and privileges as are vested in the board of public works of cities of the first class shall after said time be exercised by and vested. in the board of commissioners of cities of the first and second class."

Apart from the general principles of law which are applicable to the subject, the foregoing, in substance, constitutes the law upon which appellants' counsel rely for a reversal of the judgment. It is contended by them that the act of 1890 practically dealt with nothing except what are denominated special improvements; that is, improvements where the abutting property is assessed according to the benefits received for the purpose of meeting the cost of making the same. While there is some force to counsel's contention, yet from a consideration of all that is said in the act, and by giving all the language used in section 286, *supra*, its natural and ordinary force and effect, we are forced to the conclusion that no such limitation was intended by the Legislature in passing that section. Moreover, when section 313x1, which was adopted as an independent act, is considered in connection with section 286, there is no escape from the conclusion that the legislature intended precisely what the language of section 313x1 implies. There is no limitation in that section whatever. Indeed, when the language of that section is given its usual and ordinary force and effect, and is considered in connection with all that is said in section 286, we think it is reasonably clear that the legislature intended that no contracts for public improvements of any kind should be entered into by cities except after notice as there provided, and that cities should not make such improvements except by complying with the provisions of that section. Such, we think, is also the view that was taken by this court in the case of *Nelden v. Clark,* 20 Utah, 382, 59 Pac. 524, 77 Am. St. Rep. 917, and we feel bound by that decision. Counsel for appellants however, contend that that case is not a precedent, for the reason that all that was decided there

was whether the city council or the board of public works should let the contract for public improvements in case the improvements are made under contract. We have carefully examined the record as well as the opinion in that case, and after doing so we cannot yield assent to counsel's contention. In the complaint in that case, among other things, it was alleged that "the said mayor and city council have ordered and directed the said John T. Caine, superintendent of waterworks, to purchase material and construct the improvements to the waterworks system above described, and the said John T. Caine is proceeding to carry on said work, and is employing days' labor, instead of letting contracts to the lowest bidder."

In the answer filed on behalf of the city council in that case, it is averred that said city "had the right through its city council to direct the purchase of the material and the construction of the work as it did by days' labor." It is thus seen that it was contended by the plaintiff in that action that the city council was transcending its power in making the improvements otherwise than by procuring bids and letting the same by contract, while the defendants in effect insisted that they were not required to call for bids, or to let the work by contract. That is the precise question that is involved in the present case. Again, nothing could have been gained by merely deciding in that case what counsel for appellants now insist was decided, namely: Whether the board of public works or the city council should let the contracts for public improvements. Under the law as it then stood, the board of public works could not, without the approval of the city council, let any contract. It would have been needless, therefore, to merely decide that the board of public works should formulate and prepare the terms of a contract which the city council could ignore or refuse to approve at will. The actual question decided was whether, in making public improvements, the board of public works should advertise for bids and let such work by contract when approved by the city council, or whether the city, through its council could do such work in any manner which seemed preferable

to the council, without advertising for bids, and without entering into any contract.

Counsel for appellants have called attention to the fact, however, that if the law be construed as we have construed it, then the city must, in many instances, be hampered in doing its work, because the city would be compelled to advertise for bids, and to let contracts, whether the contemplated improvements cost ten dollars or $10,000, and would be further hampered in making repairs, and in maintaining the public improvements. While it might have been wiser, perhaps, and more convenient, if the legislature had made some exceptions along the lines suggested by counsel, yet that is a matter over which we have no control. Besides, neither section 286 nor section 313x1 requires, nor do both sections together require, that all work that the city may be called on to do must be let by contract. There necessarily are many things a city must do or have done which cannot be let by contract.

In 2 Dillon's Municipal Corporations (5th Ed. 1911) sections 802 to 805, inclusive, many exceptions to the general rule are given. In section 802, p. 1201,          2 the author in discussing this subject, says:

"The *correct rule* is that the municipal authorities have power to meet any emergency which may exist without complying with charter provisions requiring advertisement, but that they must satisfy themselves, and be able to satisfy the courts, that the emergency is such as to prevent them from complying with these provisions. If an emergency exists, which can only be overcome by disregarding the charter provisions, the municipal authorities must be prepared to show that fact, and, if they can show it, the courts will uphold their action, and will doubtless construe and apply their acts in a liberal and beneficent spirit. But in harmony with the other decisions, construing and applying statutory provisions relating to municipal contracts, the courts will not permit a supposed emergency to be made an excuse for a violation of a beneficent law, particularly where fraud, corruption, or extravagance is apparent."

From what has been said by the courts in the adjudicated cases, it seems clear that no hard and fast rule can be laid

down from which it can be determined in advance whether any particular work which is being done comes within the requirement imposed by the statute or not. As pointed out by Mr. Dillon, much may depend upon the circumstances and the prevailing conditions. In our opinion it can, however, be said without qualification that, under a statute like ours, a city may not, over the objections of a taxpayer, construct or make any new improvements or carry on construction work which amounts to an improvement, without calling for bids as the statute requires. It no doubt may make many repairs, and may protect any improvement in case of an emergency, or to do anything necessary to preserve and protect its property or that of the abutting owners in case of necessity without calling for bids. This is, however, not what the city admits by its demurrer that it is doing in making the improvement in question. The improvement in queston we think, falls squarely within the terms of the statute, and there is no claim made upon the part of the city that the work was done under an emergency, or that it should be excepted from the general rule for some other reason.

Nor is the contention tenable that the Legislature cannot interfere with the city in making the improvements on its waterworks system, since it owns and operates that system, not in its governmental, but in its private, **3** capacity. The city derives its powers from the legislature. That body, in conferring powers, may also impose at least reasonable conditions upon the city in exercising or carrying out the powers conferred. That is all that is attempted by the law in question here. Although the city is the owner, and the title to the waterworks and all property connected therewith is vested in it, yet it holds the same, not for its own use and benefit so much as it does for the use and benefit of the taxpayers and water users. The legislature may, therefore, by any reasonable regulation, protect and guard the rights and interests of the taxpayers and water users.

From what has been said, it follows that the judgment should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.