BONNEVILLE IRR. DIST. v. RIRIE, State Auditor.

No. 3604. Decided December 23, 1920. (195 Pac. 204.)

1. WATERS AND WATER COURSES—IRRIGATION DISTRICT CANNOT CONTRACT FOR WORK PAYABLE IN BONDS WITHOUT ADVERTISING FOR BIDS. Under Laws 1919, c. 68, § 15, requiring irrigation districts, before selling bonds, to advertise for bids, etc., but providing that if no bids are made and accepted, the bonds may

be used for the construction of any canal, reservoir, or works,
and section 22, requiring the district, before contracting for the
construction of canals, etc., to advertise for bids, the district,
after advertising for bids for the bonds, cannot use such
bonds in payment for the construction of its irrigation sys-
tem without advertising for bids for the construction of the
system, especially in view of section 21, making the revenue
laws of the state applicable, and Comp. Laws, 1917, § 819,
as amended by Laws 1919, c. 14, requiring municipalities or
public corporations to award contracts to the lowest respons-
ible bidder after publication.[1]

2.  WATERS AND WATER COURSES—IRRIGATION DISTRICTS ARE "QUASI
    PUBLIC CORPORATIONS." Irrigation districts organized under
    Laws 1919, c. 68, are quasi public corporations.

Original proceeding by the Bonneville Irrigation District
for mandamus to compel Joseph Ririe, Auditor of the State
of Utah, to certify certain bonds authorized and issued by
plaintiff.

ALTERNATIVE WRIT QUASHED, AND PEREMPTORY WRIT DENIED.

*Willey & Willey,* of Salt Lake City, for petitioner.

*Dan B. Shields,* Atty. Gen., for defendant.

GIDEON, J.

This is an original proceeding seeking the mandate of the
court to compel the defendant, as State Auditor, to certify
to certain bonds authorized and issued by plaintiff. The
receipts from the sale of bonds were to be used in the con-
struction of canals, pumping plant, etc., to furnish irrigating
water to the owners of lands embraced within the district.
The plaintiff Bonneville irrigation district, is organized un-
der and by virtue of chapter 68, Laws Utah, 1919. That
chapter provides "for the organization and government of

---

[1] *Utah Savings & Trust Co.* v. *Salt Lake City,* 44 Utah, 150, 138
Pac. 1165.

irrigation districts," and "for the acquisition or construction
of works for the irrigation, drainage, and local improvement
of lands embraced within such districts, also * * * for the
distribution of water for irrigation purposes." Chapter 10,
Laws Utah, passed at the Special Session of the Legislature
of 1919, is an act "relating to bonds of irrigation districts,
providing under what circumstances such bonds shall be
legal investments for state public land funds, funds of banks,
insurance companies, and trust companies, trust funds and
any money or funds which may now or hereafter be invested
in bonds of cities, counties, school districts or municipal-
ities." Section 4 of chapter 10, so far as material here, is
as follows:

"Whenever any bond of an irrigation district organized and
existing as aforesaid, including any bond authorized in any such
district but not sold, which shall be eligible to certification by the
State Auditor under section 3 of this act, shall be presented to
the State Auditor, he shall cause to be attached thereto a certifi-
cate in substantially the following form: [Here follows form for
certificate certifying that bond is in accordance with said chapter
10, as legal investment, etc.]"

Certain bonds of the plaintiff district were presented to
the defendant as State Auditor and he refused to attach a
certificate thereto. The reasons for so refusing are clearly
stated by him in a letter addressed to the plaintiff district
under date of December 17, 1920, as follows:

"This refusal is based upon the ground that the contract pro-
posed is illegal, particularly in that it is a contract for the fur-
nishing of work and material for constructing a system, the cost
of which is to be over $3,000, and which is let under this contract
without giving notice to contractors for competitive bids, as re-
quired by section 22 of the irrigation laws of the state of Utah."

The petition alleges the organization of the district; the
acts and proceedings of the district through its officers after
its organization leading up to the authorization of the bonds;
the advertisement by the directors for bids for the sale of
the bonds of the district; the fact that no bids were received
for the bonds; that following the failure to obtain a purchaser
the plaintiff entered into a contract with a construction com-
pany by the terms of which such construction company

agreed to furnish all labor and material for the construction of the irrigation system designated by the plaintiff, and in consideration of which the district agreed to pay and the construction company agreed to accept in payment of such material and labor the bonds of said district at 95 per cent. of their par value. There are other allegations contained in the complaint, but they are not material for a determination of the question presented by this record.

The defendant interposed a general demurrer to the petition, and the cause is submitted upon the legal question thus presented.

The authority of the board of directors to enter into a contract for the construction of the canals, pumping plant, etc., without advertising for bids, is the controlling question and the only one argued by counsel.

Section 15 of said chapter 68 provides that the board of directors may from time to time sell such bonds of the district as may be necessary or most advantageous to raise money for the construction or purchase of canals, reservoir sites, reservoirs, water rights and water works, etc. It also provides that before making a sale of the bonds the board shall by resolution specify its intention to sell such bonds, and the amount thereof, fix a date and hour and place where bids will be received for such sale, and that notice of sale must be given for at least 20 days in a newspaper designated. The section further provides that sealed proposals will be received for the sale of the bonds. At the time appointed the board is required to open the proposals and award the purchase of the bonds to the highest responsible bidder, or it may reject all bids, but in no event can any of the bonds be sold for less than 95 per cent. of the face value thereof. Said section further provides as follows:

"In case no bid is made and accepted as above provided the board of directors, subject to the approval of the State Board of Certification, is hereby authorized to use said bonds for the purchase of canals, reservoir sites, reservoirs, water rights and works, stock of irrigation, canal, or reservoir companies, or for the construction of any canal, reservoir and works or otherwise fully to carry out the purposes of this act; provided such bonds shall not be

disposed of at less than 95 per cent of the face value thereof."

Section 22 of said chapter 68 provides that after adopting plans for the construction of canals, etc., the board of directors shall give notice as provided in section 2 of the act and such other notice as it may deem advisable calling for bids for furnishing material or construction of such works, or any part thereof. The notice must provide that the plans and specifications can be seen at the office of the board, that the board will receive sealed proposals therefor, and that the contract will be let to the lowest responsible bidder, stating the time and place for the opening of the proposals, at which time and place the bids shall be publicly opened. Said section also directs that as soon as convenient thereafter the board shall let the work either in portions or as a whole to the lowest responsible bidder, or that it may reject any or all bids and thereafter readvertise for proposals, and, if no satisfactory proposals are then received, it may then proceed to construct the work under its own superintendence.

It is not claimed that the district at any time advertised for bids for furnishing material or doing the construction work on the proposed irrigation system. It apparently is the theory of the petitioner that, after having advertised for the sale of the bonds as provided by section 15 of the act, and no offers or bids on the bonds having been received, the directors were authorized to proceed and handle the issued bonds as provided in the last part of the section quoted in the construction of the irrigation system, and to do so without first advertising for bids for the construction of the system as required by section 22. In other words, it is the theory of the plaintiff that the failure to obtain a cash offer for the sale of the bonds authorized the officers of the district to immediately proceed to enter into a contract whereby the construction work is to be paid for by the delivery of the bonds of the district. As indicated by the quotation from the letter of the defendant, his position is that, notwithstanding the failure of the district to sell its bonds for cash, nevertheless, before authority is given the directors to dispose of the bonds and enter into a contract for the construction of

the system, such board should give the notice asking for competitive bids as provided by section 22. We are clearly of the opinion that the position of the defendant is right. Manifestly, the very purpose and object of requiring a notice asking for competitive bids in section 22 and directing that the contract shall be awarded to the lowest bidder is to procure the most advantageous contract possible for the district, and that is so regardless of whether the payment for the work and material is to be by bonds of the district or by money received from the sale of the bonds. The effort seems to have been that the district itself would not be permitted to do the work until it had at least twice called for competitive bids.

The irrigation districts organized under said chapter 68 are quasi public corporations. By section 21 of the act the revenue laws of the state for the assessment, levying, and collecting of taxes on real estate for county purposes, except as in the act modified, are made applicable for the purposes of said act, including enforcement of penalties and forfeitures for delinquent taxes. It may be said to be the general policy of the law of this state that no contract shall be awarded by any municipality or public corporation for any public improvements except to the lowest responsible bidder after publication. Comp. Laws Utah 1917, § 819, as amended by chapter 14, Laws Utah 1919; *Utah Savings & Tr. Co.* v. *Salt Lake City,* 44 Utah, 150, 138 Pac. 1165.

The alternative writ of mandate heretofore issued is quashed, and the peremptory writ prayed for is denied.


CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.