Quigley v. Comm'rs of Sumner Co.

· WILLIAM QUIGLEY, *et al.*, V. THE BOARD OF COMMISSION-
ERS OF SUMNER COUNTY.

1. COUNTY PRINTING; *Contract at less than Statutory Fees.* Plaintiffs hav-
ing entered into a contract with the defendant to do all the county print-
ing of Sumner county at rates less than those named in § 17, ch. 39,
Comp. Laws 1879, and having received and done such printing, sought
to repudiate the contract rates and recover at those named in the stat-
ute. *Held,* That the contract rates controlled, and that this was so both
as to the ordinary printing and also the delinquent tax list.

2. CONTRACT RATES FOR WORK; *Measure of Recovery.* Where a contract
is made to do certain work at certain rates, the contract rates control as
to the work actually done, although all the work contracted for was not
given by the employer to the contractor. The latter may not repudiate
the contract *in toto,* and recover upon a *quantum meruit,* but may recover
any damages sustained from the employer's breach of contract.

*Error from Sumner District Court.*

ACTION brought by *Quigley & Leonard,* publishers of the
*Sumner County Democrat,* against the *Board of Comm'rs of
Sumner Co.,* upon an account in the sum of $1,363 for print-
ing done for said county for the year ending July 3, 1879.
Trial by the court, at the November Term, 1879, when the
board, defendant, admitted that the printing and work men-
tioned in plaintiffs' itemized bills had been by them done as
set forth in their said bills, and that the several amounts
charged therein are just and reasonable and in conformity
with the statutes of the state regulating the fees and com-
pensation of printers and publishers. In view of the fore-
going admissions, the plaintiffs rested. Thereupon the board,
defendant, offered in evidence a certain written agreement
concerning the county printing of said county made and
entered into by and between it and the plaintiffs on the
3d of July, 1878, wherein it was agreed, among other mat-
ters, that the plaintiffs would do all the county printing of
Sumner county, including the delinquent tax list for the en-
suing year, for ten per centum of the statutory rates pro--

vided therefor; to the reception of which agreement the plaintiffs objected, but the court admitted the same in evidence—the plaintiffs excepting—and then the defendant rested. Thereupon the plaintiffs offered to prove that the board had rescinded and broken the contract, in that it had procured work and printing called for by the contract to be done by various parties other than the plaintiffs; that it had not given all the county printing to the plaintiffs as required by the said agreement; that it had purchased stationery called for by the contract of divers parties other than the plaintiffs; and that the county treasurer of said county had charged and collected the statutory fee of twenty-five cents for each and every land description included in the delinquent tax list for the year 1877, as set forth in the plaintiffs' itemized bills herein, as well as ten cents for each town-lot description included in said bills. To all of which evidence the board objected, which objection the court sustained—the plaintiffs excepting to the ruling. Thereupon the court, among other findings, found:

"That the plaintiffs did the work as set forth in their several itemized bills of particulars, and that the amounts charged therefor are just and reasonable and in accordance with the statutes regulating printers' fees and compensation; but that the plaintiffs and the defendant had entered into a written contract in relation to the subject-matter of this suit, which said contract, against the objection of the plaintiffs, was introduced in evidence on the part of the defendant, by the terms of which the plaintiffs were to receive for the printing done, ten per cent. of the fees and compensation fixed by the statute of the state; and that the defendant is indebted to the plaintiffs under said contract in the sum of $136.30, with interest thereon at the rate of seven per cent. per annum from the date of the rendition of this judgment, until the same be paid, together with the costs of this action."

A new trial was denied, and judgment rendered accordingly for the plaintiffs. The court also ordered that the board, at its next meeting for the purpose of levying taxes, levy a sufficient tax upon all taxable property, both personal

and real, within the said county, to satisfy the judgment, interest and costs. The plaintiffs bring the case here for review.

*Quigley & Reed,* and *A. Smith Devenney,* for plaintiffs in error.

*Charles Willsie,* county attorney, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The plaintiffs in error, plaintiffs below, entered into a contract with the defendant to do all the county printing at rates less than the fees allowed by law. Having done the work, they presented their bill for the same at legal rates. The board of commissioners declining to allow anything in excess of the contract price, they appealed to the district court, which sustained the action of the commissioners. They now bring the question to this court.

Does the contract price control, or may they, having obtained the work by means of the contract, now repudiate its obligations and recover at the rates prescribed by law where there is no contract? In 1868, the law in force was as follows: Sec. 17 of ch. 39, the act fixing fees, provided that "printers shall be entitled to receive the following fees," and names the fees for different services. Sec. 36 of ch. 25, the act prescribing the duties of county officers, reads:

"The boards of county commissioners of the several counties of this state shall have exclusive control of all expenditures accruing, either in the publication of delinquent tax lists, treasurer's notices, county printing, or any other county expenditures: *Provided,* That all county printing shall be let to the lowest responsible bidder."

This section was amended in 1872 by dropping off the proviso. (Laws 1872, p. 246.) With this change, the legislation of 1868 is still in force.

Now the argument is, that the law having prescribed certain fees for certain work, an agreement to do the work for less than legal fees is without consideration, a mere *nudum pactum;* that the legislature, perceiving the inconsistency

between two statutes, one fixing fees and the other requiring the work to be let to the lowest bidder, removed it in 1872, by taking away the latter provision, and that now the fees being fixed, the sole power of the commissioners is, to select the party to do the work. This argument is plausible, but not sound. The statute of 1868 gave the commissioners the exclusive control of the matter of county printing, with the limitation that it *must* be given to the lowest bidder. This limitation was removed in 1872, but their exclusive control was not disturbed. Before 1872, they *must;* since, they *may* let to the lowest bidder. Taking away a limitation in the one direction, does not place a limitation in the opposite. Taking away a restriction upon full discretion leaves the discretion full and free, and does not superimpose another restriction. As to the argument that a contract to do work for less than legal fees is without consideration; a distinction must be noticed between the contracts of a public officer and those of a private individual. The former *must* do the work demanded of him, the latter may do it or not, as he pleases. The title of the chapter concerning fees is, "An act fixing the fees of certain officers and persons therein named." If official services are demanded of a sheriff or other officer, he must render them or respond in damages; if services are demanded of a private person, he may render them or not, as he pleases, and without any liability for refusal. The commissioners may compel a sheriff to serve process, but they cannot compel any one to do the county printing. The printer being then free to act, should. be free to contract; while the officer who is compelled to act, may not be free to contract. Even as to officers, the right to contract for services at less than legal rates may exist. At least, the authorities are not settled in this respect, though the right to demand or contract for compensation above such rates is denied. Thus in *Gilman, et al., v. The D. V. R. Co.,* 40 Iowa, 200, a contract was made with the sheriff in advance to sell certain property upon execution for a gross sum in lieu of the legal fees. As the amount for which the property might

be sold could not be anticipated, and it was therefore uncertain whether this gross sum would be in excess of the legal fees or not, the court held the contract invalid. The statute made it a misdemeanor to take in excess of legal fees, and the court say that the contract must be good or bad at the time it is made, and not dependent for validity on the question of the amount thereafter to be realized upon the sale. It is not intimated that a contract to do the work at less than legal rates would be invalid. No stronger is the case of *Hall, et al., v. Gavitt*, 18 Ind. 390, where a principal whose compensation was from fees, permitted another to discharge all the duties and receive all the fees in consideration of a gross sum. The court declined to consider whether this gross sum would or would not be in excess of the probable fees. In *Hatch v. Mann*, 15 Wend., 45, service of process at an unseasonable hour was asked upon the promise of extra compensation, and the promise was held not binding. On the other hand, in *The People, ex rel., v. Board of Police*, 19 Sup. Ct. N. Y. 653, it appeared that the relator was appointed by a resolution of the police board of New York city, police surgeon, at a salary of $1,500. He served as such, and received said amount. Thereafter, he claimed that the law fixed the salary at $2,250, and that the police board had no power to reduce it, and he sued for the excess, yet the court held him bound by his contract; he had accepted services upon a resolution offering $1,500, and had received the $1,500. It was a contract, and bound him. Brady, J., said: "The agreement to receive fees is neither against public policy nor public morals, but rather in the spirit of retrenchment. . . . The contract was made, and is binding." See also *Drew v. The Mayor*, 8 Sup. Ct. N. Y. 443.

But it is unnecessary to decide whether the contract of a public officer to do official work at less than legal rates, is binding upon him; neither is it necessary to determine whether the contract in this case before the work had been done under it would have been binding. The question rather

is, whether a private individual, having obtained certain work upon a contract to do that work for a certain sum, can, after he has done the work, repudiate his contract and recover a larger amount upon the ground that the statute has named the sum which, in the absence of any contract, the party should receive for such work. The statute says that the printer shall be entitled to certain fees — that is, it gives him a right to such fees; but it is not one of those rights which he may not waive. A party may waive any legal right unless public morals or public policy prohibit the waiver. Does either prohibit a waiver in this case? Is the cause of public morals subserved by allowing a party who is free to accept or reject work, and who, in the exercise of that freedom, accepts an offer to do certain work at a stipuulated price, after receiving and doing the work, to repudiate his contract and demand a higher price? Does public policy prohibit the public from availing itself of any reduction in the ordinary charges for advertising? We think not. If printers' wages and the cost of paper and material fall so that the publisher of a paper will receive reasonable profit at prices less than the legal rates, we see no sufficient reason why the public may not fairly receive the benefit of such reduction. It will be perceived that rates are not named for county printing alone, but for all legal printing. An individual, seeking to sue a non-resident, must notify him by publication. For such publication, the statute fixes legal rates; rates which control in the absence of a contract. But no publisher is compelled to do this publication. He may decline, and no process will compel him to do the work. Neither has any particular person the right to this kind of work. The party may select any paper in the county. There is as much freedom as in selecting a grocer from whom to buy your groceries. Suppose the legislature should pass a law that grocers should be entitled to receive a certain amount per pound for coffee, sugar, etc.: could it fairly be claimed that one might not sell for less? — that he must charge legal rates? Or, if the statute fixed the toll for grinding

grain, or for crossing a ferry or a bridge, is no contract valid at less than statutory rates? Similar is the sale by a printer of his services. Why must he be debarred the liberty of contracting, and compelled to charge more than ordinary market rates for such services? A special argument is made as to the charges for publishing the delinquent tax list. As to these, it is said that the lots sold pay them; that the county treasurer is directed to charge upon each lot the cost of advertising and sale; that he does and must charge the legal rate, and that if the county may legally contract for and pay less, it is, as to the difference, speculating off the tax-payer. The fallacy of this is, that it assumes that the county treasurer must tax, as cost of advertising, the amount the printer might receive, and not that which he does receive. The statute does not sustain this assumption. It reads, that the treasurer shall sell, and continue to sell "until such parcel, or so much of each parcel, shall be sold as shall be sufficient to pay the taxes and charges thereon, including the *costs* of advertising and the fees for selling." (Comp. Laws 1879, p. 960, § 109.) It is the costs of advertising, that is, the actual costs, and not as respects the selling, the legal fees. If the county pays only five cents a tract for the advertising, the treasurer should charge that amount only against the tract. This not only harmonizes the statutes, but gives force to the different words employed in the section quoted.

Referring again to the section defining the powers of the county commissioners, we find that it gives them "exclusive control of all expenditures." Does this mean simply that they are to audit accounts? — or does it not also give them power in the creation of debts? It seems to us the latter. It grants general control as to county expenditures, both as to items, amounts and parties. Of course, this general power may be and is limited, in many particulars, by other provisions of the statute, but where not so limited, the general control is with the county commissioners. As they may select the janitor for the court house, and contract with him for compensation, so they may select the party to do the county printing and con-

tract with him for his compensation. They may not name the person to serve process, for the statute awards this duty to the sheriff, and the people elect the sheriff, but the county printer is not elected; he is not an officer. Neither need all the printing be given to one person; *i. e.,* one may publish the delinquent tax lists, another the sheriff's proclamations, and so as to all the varied matters which the law requires to be published.

Without pursuing the argument further, our conclusion is that plaintiffs, having contracted to do this work for a certain sum, having obtained the work by reason of the contract and having done the work, cannot now repudiate that contract and recover the amount to which the statute would have entitled them in the absence of a contract.

One other matter requires brief notice. The contract was for doing *all* the county printing. Plaintiffs offered to show that the commissioners had given *some* of the county printing to other parties, and claimed that in consequence of this breach by the commissioners, they could repudiate *in toto* and recover upon a *quantum meruit.* The court ruled that the contract controlled so far as it could be made applicable, and that plaintiffs could recover damages only for the breach, and could not repudiate the contract entirely. We think the ruling of the district court correct. (*Usher v. Hiatt,* 18 Kas. 195; *Duncan v. Baker,* 21 Kas. 99; Field on Damages, § 327.)

It will be noticed that the contract was not to do the county printing for a gross sum, but at specified rates for the different kinds of work. Hence there was no difficulty in making the contract applicable to all the work done.

There being no other question in the case, the judgment will be affirmed.

All the Justices concurring.