THE BOARD OF COMMISSIONERS OF HARPER COUNTY *et al.* v. THE STATE OF KANSAS, *on the relation of T. J. Beebe, County Attorney.*

COUNTY BOARD—*Control of County Printing—Injunction.* Under ¶ 1655 of the General Statutes of 1889, the boards of county commissioners of the several counties of the state have exclusive control over the county printing; and, in the absence of fraud or collusion, injunction will not lie to restrain the board from paying for such county printing at legal rates, although other parties may have been willing and did offer to do the county printing for a less sum than the amount fixed by law for doing such work.

*Error from Harper District Court.*

THE opinion states the case.

*Love & Snelling,* and *Geo. E. McMahon,* for plaintiffs in error.

*T. J. Beebe,* county attorney, *H. C. Finch, H. Parke Jones,* and *Shepard, Cherry & Shepard,* for defendant in error.

Opinion by GREEN, C.: This was an action for an injunction, brought upon the relation of the county attorney, against the board of county commissioners of Harper county. The petition alleged that on the 9th day of January, 1891, the board of county commissioners entered into a contract with J. R. and S. C. Hammond, the proprietors of the Anthony *Journal,* by the terms of which it was agreed that, for the period of one year then next ensuing, all the county printing should be done by the Hammonds, at legal rates; that at the time of the making of such contract the board of county commissioners had bids from two other newspaper publishers to do the county printing at much less than legal rates. It was claimed by the relator that the contract was void, for the reason that the board of county commissioners had no authority to make the same. The defendants below filed a general demurrer to the petition, which was overruled by the district court. The defendants elected to stand on their demurrer and declined to plead further to the

petition, and objected to the granting of a temporary injunction, for the reason that if the plaintiff was entitled to any order, it was a permanent injunction.   A temporary injunction was granted; and this is assigned as error, together with the overruling of the demurrer of the defendants to the petition of the plaintiff below, upon the ground that the petition did not state facts sufficient to constitute a cause of action against the defendants, or to entitle the relator to any relief.

Was the board of county commissioners authorized to make a contract at legal rates?   Paragraph 1655 of the General Statutes of 1889 reads: "The boards of county commissioners of the several counties of this state shall have exclusive control of all expenditures accruing either in the publication of the delinquent tax list, treasurer's notices, county printing, or any other county expenditures."   This section originally contained this proviso: "*Provided*, That all county printing shall be let to the lowest responsible bidder;" but in 1872 it was amended by dropping off this proviso.   By the statutes of 1868, the commissioners had the exclusive control of the county printing, with the condition that it must be given to the lowest responsible bidder.   The legislature removed this restriction in 1872, but the board of county commissioners still had exclusive control of the county printing.   In construing this section of the statutes, in the case of *Quigley v. Comm'rs of Sumner Co.*, 24 Kas. 293, Mr. Justice BREWER said:

"Referring again to the section defining the powers of county commissioners, we find that it gives them 'exclusive control of all expenditures.'   Does this mean simply that they are to audit accounts?   Or does it not also give them power in the creation of debts?   It seems to us, the latter.   It grants general control as to county expenditures, both as to items, amounts, and parties."

In *Mooers v. Smedley*, 6 Johns. Ch. 28, which was a case to enjoin the supervisors of a town from the allowance of certain bounties for wolf scalps to non-residents of the town, and alleging that the bounties were confined to residents, and that

by such action of the supervisors the tax of the plaintiff was greatly augmented, the law gave the supervisors authority "to examine, settle and allow all accounts," etc. Chancellor Kent said: "I cannot find, by any statute, or precedent, or practice, that it belongs to the jurisdiction of chancery, as a court of equity, to review and control the determination of the board. . . . This power implied and required the exercise of sound judgment. . . . This is not the case of a private trust, but the official act of a political body; and in the whole history of the English court of chancery there is no instance of the assertion of such jurisdiction as now contended for." (*Walton v. Develing,* 61 Ill. 201; *Darst v. The People,* 62 id. 306.) It is important to observe that courts of equity do not interfere by injunction for the purpose of controlling the action of public officers constituting inferior, *quasi*-judicial tribunals, such as boards of supervisors, commissioners of highways, and the like, on matters properly pertaining to their jurisdiction; nor will they review and correct errors in the proceedings of such officers. (High, Inj., § 1311; Mechem, Pub. Off., § 991.)

Section 21 of article 2 of the constitution provides that "the legislature may confer upon tribunals transacting the county business for the several counties such powers of local legislation and administration as it shall deem expedient." Under this power the legislature has given to the board of county commissioners the exclusive control of the county printing. The statute fixes the legal rates for such printing, so that the only existing restriction is that the printing cannot be let at more than the amount fixed by law. The only question, therefore, is whether or not there should be an interposition upon the part of the courts when it appears that the printing might have been done for a less sum. The board of county commissioners not only possesses the discretionary power, but the statute has given to that tribunal the exclusive control over the subject-matter; and, in the absence of actual fraud, courts cannot interfere with such discretion and power.

As we have seen, up to 1872 the statute required that the

county printing should be let to the lowest responsible bidder; it was then changed by striking out this proviso. So that the control was practically unlimited, except as to the compensation, which was fixed by law. Before 1872, they must (since, they may) let to the lowest bidder. Taking away a limitation in the one direction does not place a limitation in the opposite. Taking away a restriction upon full discretion leaves the discretion full and free, and does not superimpose another restriction. (*Quigley v. Comm'rs of Sumner Co.*, supra.)

The case at bar is different in principle from the case of *National Bank v. Comm'rs of Barber Co.*, 43 Kas. 648. In that case the board made another contract; in this no effort has been made by the board to change the terms of the agreement, or to designate any other paper in which the county printing should be done; hence we think that, in the absence of any fraud or collusion, the determination of the board is conclusive in all matters wherein it has the exclusive power, and such discretionary power has been exercised with an honest purpose and within the authority conferred upon it by the constitution and the laws enacted thereunder; and the courts have no authority to interfere by injunction so as to control such discretionary power, or restrain the board from the payment of claims for printing already done under contract.

We think the preliminary injunction should be discharged.

We recommend a reversal of the judgment of the district court.

By the Court: It is so ordered.

All the Justices concurring.