THE GEORGE O. RICHARDSON MACHINERY COMPANY
v. J. R. SWARTZEL.
No. 13,945.   (79 Pac. 660.)

SYLLABUS BY THE COURT.

1. CONTRACT — *Election of Remedies.*   Where a partially performed contract between a company and its agent for the sale of machinery is arbitrarily and wrongfully terminated by the company, the agent has the option to sue for the breach and recover damages, or upon a *quantum meruit* for the worth of his services already rendered.

2. ———— *Company Estopped from Setting up the Contract.*   The company which annulled the contract, and in effect relieved the agent from its obligations, will not be permitted to set up the contract to defeat him in an action brought for the value of the work done.

Error from Sumner district court; CARROLL A. SWARTS, judge.   Opinion filed February 11, 1905. Affirmed.

*Ivan D. Rogers,* for plaintiff in error.

*J. A. Burnette,* and *W. T. McBride,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: By this action J. R. Swartzel seeks to recover from the George O. Richardson Machinery Company the value of his services in the sale of a thrashing rig. He entered into a contract with the company by which he was to sell thrashing rigs at Caldwell and receive as compensation twenty per cent. of the selling-prices. On cash sales his commissions were to be paid out of the cash received, and on credit sales, where notes were to be taken, he was to be paid from the proceeds of the notes when each note should be paid in full. In the latter he was to receive commission certificates bearing the same number as the notes taken, setting forth the amount named in each note and when the same would become due. These certificates were not transferable or assignable.

Among other transactions, Swartzel sold a rig to James Pease on credit, the price to be paid in three instalments. Pease operated the rig a few days and then abandoned it and left the country. Swartzel began negotiations with Conklin Brothers for the sale of the Pease rig, and after the terms of sale had been practically agreed upon he wired the company that Pease had left the country, that he could sell the machine to other responsible parties, and he asked them to send a representative of the company to Caldwell. In response to the telegram the company wrote that they had instructed their agent Rice to go to Caldwell and take possession of the rig, and that if Swartzel could resell the machine to good parties for what Pease owed on it Rice would close the deal. Rice came, and after being informed by Swartzel of the situation and of his negotations with Conklin Brothers he went to the neighborhood where the thrash-

ing rig was, and when he returned told Swartzel that the deal with Conklin Brothers had been closed and that they had been placed in possession of the rig. While possession was given to Conklin Brothers the transaction was not finally closed up, the company thinking it necessary to foreclose the Pease mortgage so as to give the new purchasers an unquestioned title to the thrashing rig, and they proceeded to do so. Before it was accomplished Swartzel wrote the company asking for commission certificates on the Conklin Brothers sale.   In answer, the company stated that the sale to Conklin Brothers had not been made, that he was not entitled to any commission, and closed the letter with this statement: ''We would also request you to return us your contract, as we hereby cancel the same.''

Soon afterward Swartzel brought this action before a justice of the peace, where he recovered a judgment for $275 for the services rendered.   The company appealed to the district court, where new pleadings were filed, in which Swartzel claimed in one count upon the contract, and in the second count upon a *quantum meruit* for the actual value of the services rendered.   Upon the pleadings, the court eliminated the claim for recovery upon the contract, and the case was submitted upon the second count asking for a recovery for the value of plaintiff's services in selling the thrashing outfit for $2750, estimated at $275. He recovered $213.16.

The contentions of the company are that in making the sale to Conklin Brothers Swartzel acted under the contract, and must recover, if at all, by virtue of its terms; and, further, that if it be granted that a sale was made he was not entitled to commission certificates when he demanded them; and, even if he

had been, the refusal to issue certificates did not warrant him in ignoring the contract and bringing an action for the value of the services rendered.

It is to be noted that, in addition to the refusal of the certificates, the company in express terms declared the contract to be canceled. This was a repudiation of the entire contract, and Swartzel might rightfully assume that the contractual relations were ended, and recover upon a *quantum meruit* for the actual value of the services then performed, without reference to the specified contract rate of compensation. His evidence, confirmed by the verdict, was to the effect that he negotiated a sale and arranged the terms, which were subsequently accepted by the company. The company availed itself of the benefit of his services in this respect, and when he asked for the issue of certificates under the contract they met him with the statement that the contract had been renounced. There may have been reasons for delay in issuing the certificates, or some of them, but no attempt was made to show reasons for the arbitrary abandonment of the contract. The contract having been thus wrongfully terminated by the company, Swartzel had the option to sue for the breach and recover damages, or upon a *quantum meruit* for the worth of the services already performed. (*Jenson v. Lee*, 67 Kan. 539, 73 Pac. 72; *Fitzgerald v. Allen*, 128 Mass. 232; *Mooney v. Iron Co.*, 82 Mich. 263, 46 N. W. 346; *Derby et al. v. Johnson et al.*, 21 Vt. 17; *Carroll v. Giddings*, 58 N. H. 333; *United States v. Behan*, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168; 9 Cyc. 688.)

The company, which annulled the contract, and in effect released Swartzel from its obligations, will not be permitted to set up the contract to defeat him. "It is generally true that the party who is guilty of

Richardson v. Swartzel.

the first breach of a contract can neither found a right of action upon such contract, nor make it the basis of defense to an otherwise just claim.'' (*Stage Company v. Peck*, 17 Kan. 271, 274.) Where a contract contemplates a number of independent transactions, with fixed compensation for each, and the contract is terminated, the contract rate may, as the company contends, be applied to such independent transactions as have been fully performed ; but here the transaction in question was not complete. It could not have been fully closed until the last note taken from Conklin Brothers had been paid, and the claim of the company is that the sale even was incomplete when the contract was canceled and the action brought.

It is argued that the refusal of certificates was, at most, a violation of a collateral undertaking which did not justify Swartzel in ignoring the contract, and the case of *Quigley v. Comm'rs of Sumner Co.*, 24 Kan. 293, is cited in support of the contention. The argument and authority do not fit the facts of this case, because the violation in this instance is not of a collateral part of the contract, but in the letter refusing commission certificates there was a renunciation of the entire contract for reasons of their own, which were not given.

We find no prejudicial error in the record, and hence the judgment of the district court is affirmed.

All the Justices concurring.