A. H. BENNETT V. W. L. TAYLOR AND M. A. TAYLOR,
*as Partners, etc.*

No. 14,428.    (84 Pac. 533.)

SYLLABUS BY THE COURT.

CONTRACTS—*Sale—Non-delivery—Breach by Vendee—Forfeiture.* Where, in an action to recover damages for the non-delivery of corn on the track in North Topeka, under a contract, it was admitted that the buyers were to pay for each car upon the presentation to them of a draft therefor accompanied by the bill of lading and certificate of weight and grade, and it was shown that the seller placed a car of corn on the track, drew a draft for the contract price payable to the Merchants' National Bank of Topeka, and affixed to it the bill of lading, to which was attached the certificate of weight and grade, and the bank presented the draft for payment, with the bill of lading and certificate of weight and grade, and payment was not made during business hours, and at the end of the day the bank required the drawer to take up the draft, it was error for the court to instruct the jury that if the buyers on the following day tendered to the seller the amount of the draft and requested a delivery of the bill of lading and certificate, and the seller refused, the neglect of the buyers to take up the draft on presentation was not a forfeiture of the contract, and the seller would be liable for damages for non-delivery of the corn.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed January 6, 1906. Reversed.

STATEMENT.

THE Bennett Commission Company sold and contracted to deliver to the Taylor Grain Company, on or before June 21, 1903, 10,000 bushels of corn in the

car, on the track in North Topeka. On June 19, 1903, in part fulfilment of this contract, the commission company placed a car of inspected corn on the track in North Topeka, and drew a sight-draft upon the Taylor Grain Company in favor of the Merchants' National Bank of Topeka, to which it attached the bill of lading and inspection certificate and delivered them to the bank about noon of that day, and received credit for the amount of the draft. A messenger of the bank, for the purpose of presenting the draft for payment, called at the office of the grain company, in North Topeka, between one and two o'clock P. M. of that day with the draft, to which were attached the bill of lading and inspection certificate. No person being in the office, he left a note calling attention to the fact that such draft was held by the bank.

Between one and two o'clock Miss Campbell, the cashier of the grain company, returned to the office, found the notice, and telephoned the bank inquiring if this draft was a cash item, and, being informed that it was, she called up the commission company's office and made the same inquiry, and received the same answer. She then drew the firm's check on the Bank of Topeka in favor of the Merchants' National Bank, and caused it to be certified by the vice-president of the Bank of Topeka, and called at the Merchants' National Bank after business hours to take up the draft. The doors were not closed, and she applied to the cashier for the draft and was informed that the commission company had taken it up. She then went to the Bank of Topeka to get a certified check payable to the Bennett Commission Company, but that bank was closed. At the close of banking hours on June 19 the Merchants' National Bank called up the commission company and informed it that its draft had not been paid, and that it must take it up, which it did immediately, and gave its check for the amount. The next morning Miss Campbell returned to the Bank of Topeka and secured a certified check payable to the

commission company, and presented it to that company, but it refused to accept it.

Thereafter the commission company refused to deliver any more corn, and the grain company brought this action to recover damages resulting to them from the non-delivery of the corn in accordance with the contract. The commission company as a defense relied upon the non-payment of the draft on June 19 as a forfeiture by the grain company of the contract, and as a release of it (the defendant) from any further obligation to deliver the corn. In reply to this answer the plaintiffs stated:

"The agreed price of said corn was due and payable from said plaintiffs to said defendant as fast as the same was loaded on a car or cars, whenever thereafter bills of lading and bills or drafts for and on account of the value thereof, drawn by the seller of said corn, were presented to the purchasers of the same for payment by said seller or his agent, or the assignee of said bills of lading and bills or drafts."

The trial resulted in a judgment for plaintiffs, which the defendant seeks to reverse by this proceeding.

*A. B. Quinton, E. S. Quinton,* and *M. M. Miller,* for plaintiff in error.

*Edwin A. Austin,* and *Otis E. Hungate,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: The important question arising upon the admitted facts is, Was the refusal of the Taylor Grain Company to accept the car of corn tendered June 19 and to pay the draft *on that day* such a violation of the contract as to relieve the Bennett Commission Company from further obligations under it?

Parties may put such legal conditions into a contract as they can agree upon. In the contract under consideration it was agreed that when the commission company should deliver a car of corn on the tracks in North Topeka, and secure a certificate of weights and

grade, and present to the grain company a bill of lading therefor, with certificate of weights and grade, together with draft for the value, according to the terms of the contract, the grain company would receive the car and pay therefor upon demand.  The commission company in this complied literally with the terms of the contract, and the grain company failed in the performance of their part.  One of the contentions of the plaintiff in error is that the court erred in the following instruction to the jury:

"In this case one of the questions for you to determine will be whether or not the defendant has been relieved from liability on this contract or contracts. If in the performance of this contract the defendant presented the necessary bill of lading, certified weights and grade, and draft, and the plaintiffs refused to pay the draft, then the defendant would have a right to refuse to perform the contract further, because when it had taken the necessary steps, when it had furnished the bill of lading and the certificate showing that the corn was up to grade, and the plaintiffs failed and refused to pay it, then it would not have to perform the contract further, and would not have to make a second tender of some part of the corn.  But in this connection I further instruct you that if the defendant in this case, in attempting to perform this contract on its part, had a car-load of corn, and had a bill of lading and the necessary inspection certificate or ticket, and drew a draft on the plaintiffs and left it in the Merchants' National Bank on the 19th, about noon, to be presented for payment, and the collector or agent of that bank went to the plaintiffs' place of business in North Topeka, but did not find any person there to present the draft to, and left a note to the effect that there was a draft drawn upon the plaintiffs and for collection in the Merchants' National Bank, and that thereafter, and on that same afternoon, the young lady who testified here was the cashier of the plaintiffs, and she returned to the office and found the note calling attention to the fact that a draft had been drawn upon the plaintiffs, and that she then immediately, or shortly thereafter, came over to this side and procured a certified check payable to the Merchants' National Bank, and procured that certified check within a

reasonable time, and took it to the bank, and when she got there found that the draft had been taken up by the defendant and that the bank had then closed, and that on the next day she procured a certified check payable to the defendant in this case and took it up and presented it to the defendant, and requested that it turn over the papers to her, and that it refused to do so, then I instruct you that that would not constitute a forfeiture of the contract; in other words, that the defendant would still be liable under the contract sued upon in this case."

The court told the jury in the latter portion of this instruction that if upon the day after the draft had become dishonored the buyers secured a certified check for the value of the corn and presented it to the Bennett Commission Company, and requested that it turn over the bill of lading, draft and certificate of weight and grade to the buyers, and the commission company refused to do so, this would be a compliance by the Taylor Grain Company with the conditions of the contract. This was error. By this instruction the court extended the time for payment beyond that expressly agreed upon by the parties. It is beyond the power of a court to put conditions, limitations or extensions on the explicit terms of a contract. If the terms of the contract are definite and certain, the court must leave the parties where they have placed themselves by their agreement. If the Taylor Grain Company ·wished time after delivery to make payments, they should have caused such condition to be made a part of their agreement. Having admitted, as they did in their reply, that the agreement was that they should make such payment on demand, the court could not extend the time, or insert other conditions in the agreement. If it could extend the time within which the buyers might pay for the corn beyond the time expressed in the agreement, it could, by the same rule, extend the time within which the seller might make final delivery, and instead of this time expiring on June 21, as agreed, it could be made to expire on June 22.

Bank v. McIntosh.

By the agreement of the parties the draft was payable on presentation, provided it was accompanied with the bill of lading and certificate of weight and grade. If the draft was not paid on that day it became dishonored, and would be charged back, either to the account of the drawer or transmitter. In this case, after dishonor, the drawer was requested to take up the draft, which it did, and the bill of lading, which was the title to the corn, was returned to it. Thereafter it was not required to hold the corn subject to any subsequent order of the Taylor Grain Company, but might immediately dispose of it. The Taylor Grain Company, having failed to meet their obligation under the contract, forfeited all right to insist upon a delivery of the corn, or to recover damages for a non-delivery thereof.

Many other questions are argued by plaintiff in error which by reason of the views here expressed become immaterial. For the error in giving the instruction the judgment is reversed and the cause remanded.

All the Justices concurring.