THE CENTRAL LUMBER COMPANY, *a Partnership, etc.,*
Appellee, v. THE ARKANSAS VALLEY LUMBER COM-
PANY, *a Partnership, etc., Appellant.*

No. 17,319.

SYLLABUS BY THE COURT.

1. SALES—*Rescission by Seller—Notice to Buyer Before Time
for Delivery—Mitigation of Damages.* If before the time
for delivery arrives the seller notify the buyer that a por-
tion of the goods will not be delivered it is the duty of the
buyer to mitigate damages by going into the market and
buying other goods, if he is able to do so.

2. ———— *Rescission by Seller—Notice to Buyer Before Time
for Delivery—Mitigation of Damages—Action by Buyer—
Burden of Proof.* In an action by the buyer for damages oc-
casioned by the seller's refusal to deliver, the burden rests
upon the seller to show that, after notice that the contract
would not be filled and before delivery, the buyer might have
protected himself from loss by purchasing other goods.

3. ———— *Refusal of Seller to Deliver — Damages — Time of
Measurement.* In the absence of proof by the seller of the
character just stated the damages should be assessed as of
the date when, under the contract, the goods should have been
delivered.

4. ———— *Rescission of Seller for Default of Buyer.* Under
a contract contemplating delivery in several carload lots,.
to be paid for in part on receipt of the invoice for each
car and the balance on receipt of the car, the seller is not
obliged to make further delivery when the buyer is in default,.
which has not been waived, in his payments for previous ship-
ments.

5. ———— *Rescission by Party Guilty of First Breach.* If the
seller has been guilty of the first breach of the contract and

be himself in default, which has not been waived, he can not claim the right to rescind because payments for deliveries subsequent to his default have been withheld.

6. —— *Pleading Default on Specified Day Waives Previous Default.* If in an action for damages for refusal to deliver the buyer elect to plead default and repudiation of the contract by the seller on a specified day, he is bound by his pleading. He waives previous defaults on the part of the seller and the seller is entitled to the benefit of the rule stated in paragraph 4.

Appeal from Sedgwick district court. Opinion filed December 9, 1911. Affirmed.

*R. L. Holmes,* and *Charles G. Yankey,* for the appellant.

*E. L. Foulke,* and *C. A. Matson,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for a balance due on an open account for shingles and lumber sold and delivered to the defendant. The defendant admitted the correctness of the account and asked damages for a breach of the contract of sale relating to the shingles. The plaintiff recovered and the defendant appeals.

The plaintiff resides in the state of Washington. The defendant resides in the city of Wichita, Kan. The contract was made by communications, partly by telegraph and partly by mail, in September, 1906. The court interpreted the writings and advised the jury that the contract called for five carloads of shingles. It may be assumed that this interpretation was correct, but as early as November, 1906, the plaintiff took the position that it was not bound to deliver more than three carloads, and has ever since adhered to that view. No specific date for delivery was fixed, but the plaintiff undertook to make reasonably prompt shipment, provided it could obtain the cars, which were then very

hard to secure on the Pacific coast. On November 7 the plaintiff wrote the defendant that it had three carloads of shingles at the mill ready for shipment, but that it might be some time before it could get cars to do so. The letter further stated that those were all the shingles the plaintiff would be able to furnish. On December 1, 1906, one carload of shingles was shipped, which arrived in Wichita on January 31, 1907. The invoice was received by the defendant about January 6, and according to the contract it was then the defendant's duty to deduct the freight and remit 90 per cent of the price at once, the balance of 10 per cent to be paid when the car was received and its contents checked out. The defendant made a mistake in computing the freight, so that its remittance for the advance payment on this car was too large by $114.63. On March 4, the plaintiff sent a check to the defendant for this amount, to correct the error. On December 12, 1906, a second car was forwarded, which reached Wichita on March 27, 1907. The advance payment was made but the balance due after the arrival of the car, amounting to $37.10, was not paid. On May 21, 1907, the plaintiff wrote the defendant that if it was ever able to secure another car the third carload of shingles which had been promised would be forwarded, but stated that no more would be shipped. On July 9, 1907, the defendant still being in default, the plaintiff wrote the defendant declining to make further delivery because the payments on former shipments were withheld.

The defendant in its answer elected to claim that the plaintiff's default occurred through a repudiation of the contract on July 9, 1907, and proved its damages as of that date, the price of shingles then having advanced one dollar per thousand. Some evidence was also introduced of the price in May, 1907. The court instructed the jury that the plaintiff was not bound to make further delivery while the defendant was in default, unless the default had been waived, and as a

natural consequence the defendant's claim for damages was disallowed by the jury.

The principle of law stated in the instructions is sound. (*Stage Company v. Peck,* 17 Kan. 271; *Bennett v. Taylor,* 72 Kan. 598, 84 Pac. 533; *Bailey v. Gas Co.,* 82 Kan. 746, 109 Pac. 411.)

The defendant contends, however, that because the plaintiff had declined as early as November 7, 1906, to ship more than three cars, and because more time was taken to ship even the two cars which were delivered than the contract allowed, the plaintiff itself was in default, and consequently was not entitled to the benefit of the rule stated in the instruction.

The principle of law which furnishes the basis for this contention is also sound.

"It is generally true, that the party who is guilty of the first breach of a contract can neither found a right of action upon such contract, nor make it the basis of defense to an otherwise just claim." (*Stage Company v. Peck,* 17 Kan. 271, 274.)

(See, also, *Richardson v. Swartzel,* 70 Kan. 773, 79 Pac. 660; *Fairchild etc. Co. v. Southern etc. Co.,* 158 Cal. 264, 110 Pac. 951; *Hull Coal & Coke Co. v. Empire Coal & Coke Co.,* 113 Fed. 256, 51 C. C. A. 213.)

The principle is stated in 35 Cyc. 133, as follows:

"When payment of the price is to be made in advance of or concurrent with delivery it is of the essence of the contract, and a failure to pay is such a breach of the contract as will justify a rescission, and this is true, although the amount withheld is small. But the seller himself must not be in default."

The defendant, however, deprived itself of the benefit of this rule by its answer in which it alleged, and repeated in the most positive terms, that the plaintiff's default occurred on July 9, 1907. This allegation was very material because it fixed the date at which damages were provable and enabled the defendant to take advantage of the high price of shingles at that time. If

the defendant desired to stand at all on the notification of November, 1906, that the contract would not be fulfilled the duty rested upon it to mitigate damages by then going into the market and buying shingles, if it were able to do so. In that event the plaintiff might have shown that the defendant could have supplied its needs at prices much below those prevailing the next July, and in the absence of such proof damages were still assessable, not as of July 9, 1907, but as of the true date, when, under the contract, the shingles were to be delivered.

In the case of *Mercantile Co. v. Lusk,* 45 Kan. 182, 25 Pac. 646, the syllabus reads as follows:

"In an action by the buyer against the seller for breach of contract for the delivery of corn, the measure of damages is, as a general rule, the market value of the corn at the time and place of delivery, less the contract price.

"In such case, when the seller, after his contract of sale is made, notifies the buyer that he will not fill the contract, *held,* that in the absence of any evidence on the part of the defaulting seller, that the buyer, after notice that the seller would not fill the contract, and before date of delivery, could have purchased corn in the market of the place of delivery upon such terms as to have mitigated his loss, the measure of damages remains the same." (Syl.)

The case made by the pleadings, therefore, is entirely different from what it would have been if the defendant had not chosen to ignore the letter of November 7, 1906, and the contract date of delivery; and manifestly the defendant can not make use of those dates for the purpose of putting the plaintiff in default and then choose a much later date for the purpose of assessing damages. No application was made to amend the pleadings, or for instructions based upon the evidence both within and without the issues, or for release in any other way from the allegations of the answer. Therefore, the defendant is remediless here.

The claim is made that the defendant was not in de-

fault on the second carload of shingles, because the plaintiff had in its possession the overpayment on the first car, which might have been applied on the account. This overpayment was returned, however, on March 4, and the second car did not arrive until March 27.

The judgment of the district court is affirmed.