## SCHULTE v. SALT LAKE CITY et al.

No. 5295.  Decided April 26, 1932.  (10 P. [2d] 625.)

*E. A. Walton,* of Salt Lake City, for plaintiff.

*Fisher Harris*, City Atty., of Salt Lake City, for defendants.

*Dey, Hoppaugh, Mark & Johnson* and *Clarence Beck*, all of Salt Lake City, as amici curiae.

ELIAS HANSEN, J.

Plaintiff, a resident and taxpayer of Salt Lake City, Utah, applied to this court for a writ of prohibition. She seeks to prohibit the defendants from further proceeding with the performance of a contract with Ryberg Bros. for the construction of a storm sewer for Salt Lake City, Utah. Upon her petition and affidavit a citation was issued directing that defendants show cause before this court why the writ prayed for should not be granted. Within the time specified in the citation the defendants answered the petition and affidavit for the writ. At the time of the oral argument counsel for the respective parties entered into the following written stipulation:

"It is hereby stipulated and agreed by and between the parties hereto that for the purposes of this cause the facts well pleaded in plaintiff's amended petition and affidavit shall be deemed to be true except in so far as they may be inconsistent with the affirmative facts well pleaded in the defendants' answer, which latter well pleaded facts are likewise deemed to be true for the purposes of this cause."

We understand the foregoing stipulation to mean that the facts well pleaded in the petition and affidavit for the writ shall be deemed true only in so far as such well-pleaded facts are not inconsistent with the well-pleaded facts in defendants' answer, and that all of the well-pleaded facts in the answer are deemed to be true. Thus construing the stipulation, the facts out of which this controversy arose as follows: On October 27, 1931, pursuant to an election duly called and held, the qualified electors of Salt Lake City authorized the creation of a bonded indebtedness of $600,000 for the purpose of constructing a general storm and drainage sewer for the use and benefit of the city and its inhabitants; that

the defendants have caused plans and specifications and an estimate of the costs of various units of the proposed storm sewer to be made; they have duly and regularly adopted such plans and specifications, and they have advertised for bids for the construction of what is known as the east section of the proposed storm sewer. The advertisement for bids reserved the right to reject any and all bids. Pursuant to the advertisement, various bids were received. The American Concrete & Steel Pipe Company bid $117,691.48 and Ryberg Bros. bid $117,958.84. Each of the other bids, eleven in number, were higher than the bid of Ryberg Bros., the highest being in excess of $155,000. On the day fixed in the notice, February 24, 1932, the bids were opened in the presence of representatives of the several bidders, including the American Concrete & Steel Pipe Company and Ryberg Bros. On February 26, 1932, the defendant board of commissioners held a public hearing relative to the letting of the contract at which hearing the American Concrete & Steel Pipe Company appeared by its attorney and executive officer and Ryberg Bros. appeared in person and by counsel. All who appeared were given an opportunity to be heard. At the hearing it was made to appear that the American Concrete & Steel Pipe Company is a corporation organized and existing under the laws of the state of California. It is financially responsible and has a good reputation as a contractor. It has never maintained headquarters nor any permanent representative in this state. It owns no property in this state. The proposed contract for the east section of the storm sewer contains this provision:

"It is expressly agreed by the contractor that if in carrying out this contract the workmanship, materials, and manner of construction provided in and contemplated by this contract, and the plans, profiles and specifications accompanying and forming part of the same are followed and carried out, the improvement contemplated herein will remain in good condition for the period of one year from the date of its completion; and that if said improvement does not remain in said condition for such length of time, it will be because of defects in the workmanship, materials or manner of construction; and the Contractor hereby expressly agrees and guarantees that such improvements and

every part thereof will remain in such condition for the period of one year after its completion and that any repairs necessary to maintain said improvement and every part thereof in good condition during said time will be made by the Contractor without additional charge or cost to Salt Lake City."

During the hearing before the commission attention was called to the foregoing provision of the proposed contract, and the question was asked one of the representatives of the American Concrete & Steel Pipe Company what provision would be made by the company for making necessary repairs on the sewer in case of an emergency. The representative replied that the bond to be given by the company would cover all of the provisions of the contract. It further appeared at the hearing that Ryberg Bros. is a co-partnership consisting of W. E. Ryberg and E. W. Ryberg; that they reside and maintain their place of business at Salt Lake City, Utah; that they are financially responsible and own ample equipment for performing the necessary work of constructing the east section of the proposed storm sewer; that they have completed contracts for the construction of public improvements for the state of Utah and Salt Lake City aggregating more than $5,000,000; that they have completed twenty-nine contracts for Salt Lake City, thirteen of which contracts consisted in the constructing of sewers; that all of their dealings with Salt Lake City have been eminently satisfactory and they have demonstrated their skill, honesty, fidelity, integrity, and faithfulness as contractors. After the hearing was had the defendant commissioners awarded the contract for the construction of the east section of the storm sewer to Ryberg Bros. pursuant to their bid in the sum of $117,958.84. Other facts are alleged in the answer, but their materiality is so doubtful that we do not deem it necessary to call attention to them in this opinion. This proceeding is prosecuted to prohibit defendants from carrying out the contract so awarded to Ryberg Bros. Plaintiff's claimed right to the writ prayed for is bottomed upon the ground that the bid of the American Concrete & Steel Pipe

Company was $267.36 lower than the bid of Ryberg Bros.; that therefore it was the duty of the defendant commissioners to award the contract to the American Concrete & Steel Pipe Company and they were without authority in law to award the contract to Ryberg Bros. It is contended on behalf of plaintiff that the contract under review must be let pursuant to Comp. Laws Utah 1917, § 819, p. 270, as amended by Laws of Utah 1919, chap. 14, p. 23. We quote the section, as amended (with exception of last paragraph) :

"Whenever the Board of Commissioners or City Council of any city or board of trustees of any town in this State shall contemplate the making of any new improvement to be paid for out of the general funds of said city or town, such Board of Commissioners, City Council or Board of Trustees shall cause plans and specifications for and an estimate of the cost of said improvement to be made. If the estimated cost of such improvement, in case of a city of the first class, shall be less than $6,000.00, or, in a city of the second or third class, less than $2,000.00, such city or town may make such improvement without calling for bids for making the same. If the estimated cost of such proposed improvement shall exceed the amounts above mentioned, then said city or town shall, if it shall determine to make such improvement, do so by contract, after publication of notice for at least five days in a newspaper of general circulation printed and published in such city or town; provided, that where no newspaper is printed or published in such city or town, such notice shall be posted in at least five public places in such city or town, the notice so posted to remain posted for at least three days; provided further, when the cost of a contemplated improvement shall exceed the sum of $6,000.00 and $2,000.00, respectively, then the same shall not be so divided as to permit the making of such improvement in several part, except by contract; provided further, that the Board of Commissioners, City Council or Board of Town Trustees shall have the right to reject any or all bids presented, and all notices calling for bids shall so state. In case bids are called for as provided in this section and the proposals received shall exceed the estimate of the cost of making the improvement, all shall be rejected and the Board of Commissioners or City Council or the Board of Trustees shall advertise anew in the same manner as before. If after twice advertising, as herein provided, no bid shall be received that is satisfactory and less than the estimated cost of such improvement, the Board of Commissioners, City Council or Board of Trustees may proceed under its own direction to make the improvement."

Defendants contend that the foregoing statute has no application to a contract such as the one under review because the proposed storm sewer is to be paid for out of a special and not out of the general fund of Salt Lake City. Defendants further contend that, even though they are required to let the contract to the lowest responsible bidder, their action in letting the contract to Ryberg Bros. is not open to judicial inquiry in the absence of proof of fraud or bad faith by the commissioners. Defendants also pleaded that plaintiff should not be heard to complain because of her delay in bringing the proceeding. In support of her contention, plaintiff cites the following cases: Bishop on Contracts, § 1440; 5 Page on Contracts, § 2007; 2 Dillon Mun. Corp., §§ 781, 802 and 811; 3 McQuillin Mun. Corp., §§ 1227 and 1286; Beach Public Corp., § 698; *Northern Pac. R. Co.* v. *Boyd,* 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931; *McMullen* v. *Hoffman,* 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117; *People* v. *Gleason,* 121 N. Y. 631, 25 N. E. 4; *Seysler* v. *Mowery,* 29 Idaho, 412, 160 P. 262; *Armitage* v. *City of Newark,* 86 N. J. Law, 5, 90 A. 1035; *Fourmy* v. *Town of Franklin,* 126 La. 151, 52 So. 249; *Berry* v. *Tacoma,* 12 Wash. 3, 40 P. 414; *Kratz* v. *City of Allentown,* 304 Pa. 51, 155 A. 116; *Tuller Construction Co.* v. *Lyon,* 231 App. Div. 174, 246 N. Y. S. 611.

Defendants cite and rely upon the following cases: *Bohn* v. *Salt Lake City* (Utah) 8 P. (2d) 591; 19 R. C. L. § 356, p. 1068, 1069; *Utah Savings & Trust Co.* v. *Salt Lake City,* 44 Utah 150, 138 P. 1165; *Barnes* v. *City of Lehi,* 74 Utah 321, 279 P. 878; *Elliot* v. *City of Minneapolis,* 59 Minn. 111, 60 N. W. 1801; *Board of Com'rs* v. *State ex rel. Beebe,* 47 Kan. 283, 27 P. 997; *Lee* v. *City of Ames,* 199 Iowa 1342, 203 N. W. 790; *Connors* v. *Stone,* 177 Mass. 424, 59 N. E. 71; *Kundinger* v. *City of Saginaw,* 132 Mich. 395, 93 N. W. 914; *Delker* v. *Board of Chosen Freeholders of Atlantic County,* 90 N. J. Law 473, 101 A. 370; *Murray* v. *Mayor of City of Bayonne,* 73 N. J. Law 313, 63 A. 81; *Butler* v. *Print-*

*ing Com'rs,* 68 W. Va. 493, 70 S. E. 119, 38 L. R. A. (N. S.) page 659; *Madison* v. *Harbor Board of Baltimore,* 76 Md. 395, 25 A. 337; *City of Denver* v. *Dumars,* 33 Colo. 94, 80 P. 114; *Johnson* v. *Sanitary Dist. of Chicago,* 163 Ill., 285, 45 N. E. 213; *Hoole* v. *Kinkead,* 16 Nev. 217; *State ex rel. Nebraska Bldg. & Inv. Co.* v. *Board of Commissioners,* 105 Neb. 570, 181 N. W. 530; *U. S. Wood Preserving Co.* v. *Sundmaker* (C. C. A.) 186 F. 678; *Gilmore* v. *City of Utica,* 131 N. Y. 26, 29 N. E. 841; *Leavy* v. *City of Jackson,* 247 Mich. 447, 226 N. W. 214; *Peckham* v. *City of Watsonville,* 138 Cal. 242, 71 P. 169; *Williams* v. *City of Topeka,* 85 Kan. 857, 118 P. 864, 38 L. R. A. (N. S.) 672, Ann. Cas. 1913A, 497; *Thoits* v. *Byxbee, City Supt. of Streets,* 34 Cal. App. 226, 167 P. 166; *Wilson* v. *City of New Castle,* 301 Pa. 358, 152 A. 102; *State* v. *Rickards,* 16 Mont. 145, 40 P. 210, 28 L. R. A. 298, 50 Am. St. Rep. 476; *Reuting* v. *City of Titusville,* 175 Pa. 512, 34 A. 916; *Gelling* v. *Edwards, County Auditor,* 116 Minn. 484, 134 N. W. 221, 38 L. R. A. (N. S.) 668; *Faist* v. *Mayor of Hoboken,* 72 N. J. Law 361, 60 A. 1120; *Delker* v. *Board, etc., of Atlantic County,* 90 N. J. Law 473, 101 A. 370; *Schefbauer* v. *Board of Township Committee,* 57 N. J. Law 588, 31 A. 454, 459; *Holmes* v. *Common Council of Detroit,* 120 Mich. 226, 79 N. W. 200, 45 L. R. A. 121, 77 Am. St. Rep. 587; 3 McQuillin Mun. Corp. (2d Ed.) § 1288, p. 862, § 1330, p. 915; 2 Dillon Mun. Corp. (5th Ed.) § 811, pp. 1222-1223; 6 McQuillin Mun. Corp. (2d Ed.) § 2462; 1 Spelling Extraordinary Relief, § 718.

The cases cited deal with the questions raised by the pleadings and tend to support the contentions of the respective parties. There will be found collated in a note to *Butler* v. *Printing Com'rs,* 68 W. Va. 493, 70 S. E. 119, 38 L. R. A. (N. S.) 654, numerous cases dealing with the questions here involved. It will be of but little, if any, aid in reaching a proper conclusion in this case to determine whether or not the letting of the contract under re-

view comes within the purview of section 819 above quoted, and therfore we refrain from expressing any opinion upon that question. It is conceded by the parties to this litigation that plans and specifications and an estimate of the cost of the storm sewer were made; that defendants advertised for bids as directed by section 819 and that the bids of both the American Concrete & Steel Pipe Company and Ryberg Bros. were below the estimated cost of constructing the east section of the storm sewer. The question upon which the parties divide is whether the defendants had authority to award the contract to Ryberg Bros., in view of the fact that their bid was $267.36 higher than the bid of the American Concrete & Steel Pipe Company. The provisions of section 819 do not aid plaintiff's cause upon that question. Nowhere in the act is the board of commissioners directed to let the contract to the lowest responsible bidder. So far as appears from the language used in section 819 the only limitation placed upon the authority of the commissioners in awarding a contract for a public improvement is that, in case the bids exceeded the estimated cost of making the improvement, they shall be rejected. The defendant commissioners in awarding the contract in controversy to Ryberg Bros. have complied with and have not offended against any of the express provisions of section 819. If, therefore, the plaintiff is entitled to prevail in this proceeding, it must be because of reasons independent of any express provision to be found in our statutory law.

Independent of any statute regulating the awarding of contracts for the construction of public improvements, the city commissioners are required to act in good faith, without fraud, collusion, corruption, or palpable abuse of discretion, and with due fidelity to the public interests. Note to *Butler* v. *Printing Com'rs*, 38 L. R. A. (N. S.) 659 and cases there cited.

We shall not, in this opinion, undertake the arduous task of reviewing the numerous authorities dealing with the question here presented for determination. The general rule

deducible from the adjudicated cases and text-writers is to the effect that, where there is no statutory limitation upon the power of the proper officers of a city to let contracts for public improvement, such officers have a broad discretion. Courts refuse to interfere with their control of the matter so long as they do not exceed the power delegated to them, or invade private rights or act in bad faith or palpably abuse their discretion. A similar rule prevails in most jurisdictions under statutes which require that contracts for public improvements be let to the lowest responsible bidder. In such case the officers whose duty it is to award the contracts are vested with discretion in determining who is the most responsible and best bidder. Responsibility is not, according to the weight of judicial authority, confined to financial responsibility. It includes the experience, skill, ability, and honesty of the bidders. Courts will not interfere with the decision of the city authorities in awarding a contract if such decision is founded upon such facts that it is not a manifest abuse of discretion, is exercised in good faith, is in the interest of the public and is without collusion or fraud, and is not influenced by motives of personal favoritism or ill will. The foregoing rules are supported by the great weight of authority. They are founded upon sound reasons. Applying these general rules of law to the stipulated facts in the instant case, is plaintiff entitled to the writ prayed for? We are of the opinion that the question must be answered in the negative. The difference in the bid of Ryberg Bros. and that of the American Concrete & Steel Pipe Company was only $267.36 on a contract involving an expenditure of nearly $118,000. Ryberg Bros. were known by the commission to possess the necessary experience, skill, and ability to insure the prompt and efficient construction of the proposed improvement. They possess a complete equipment for the performance of the work. So far as appears from the stipulated facts, the American Concrete & Steel Pipe Company may or may not have had those qualifications. In light of the small dif-

ference in the two bids the commissioners may well have honestly believed that the interests of the public required that the contract be awarded to Ryberg Bros., who had the equipment on hand to begin work at once and who in the past had satisfactorily constructed several improvements of a similar kind rather than to award it to the American Concrete & Steel Pipe Company, concerning which it was merely known that it was financially responsible and had a good reputation as a contractor. Moreover, the commission may well have anticipated that the sewer would in all probability need some repairs during the first year after its construction; that it was a distinct advantage to have some one at hand who could promptly make such repairs, and that Ryberg Bros. would continue to maintain their equipment in Salt Lake City, but that the American Concrete & Steel Pipe Company would move their equipment away from the state as soon as the work was completed. These are facts which the commission, in the exercise of their discretion, could properly take into consideration in determining whose bid was the best. They are facts which may well have caused the commission to honestly and in good faith conclude, as they did, that the bid of Ryberg Bros. was the most satisfactory and best.

It is alleged in plaintiff's petition and affidavit for the writ, and denied in defendants' answer thereto, that defendants awarded the contract to Ryberg Bros. instead of the American Concrete & Steel Pipe Company because the former was a local, and the latter a foreign, concern. The record before us does not support plaintiff's claim that defendants were influenced by the residences of the bidders in awarding the contract here under review. It follows that plaintiff is not entitled to the writ prayed for.

The writ is denied. Defendants are awarded their costs.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.