**JAYE SMITH CONSTRUCTION COMPANY, Plaintiff and Respondent,**

v.

**BOARD OF EDUCATION, GRANITE SCHOOL DISTRICT, Defendant and Appellant.**

No. 14497.

Supreme Court of Utah.

Jan. 26, 1977.

---

Ted D. Smith and M. Byron Fisher, of Fabian & Clendenin, Salt Lake City, for defendant and appellant.

Dwight L. King, Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellant requested bids from contractors to build an addition to a junior high school gymnasium according to plans and specifications prepared by an architect. The bids were all submitted in sealed envelopes, and on March 6, 1973, at the offices of the Granite School District, a bid-opening session was conducted to determine the low bidder pursuant to Section 53–11–1, U.C.A.1953, which provides:

> . . . At the time and place specified in said notice the board shall meet and publicly open and read all proposals received, and, if satisfactory bids have been received, shall award the contract to the lowest responsible bidder. . . .

The bids, which were submitted in sealed envelopes, were opened by Mr. Davidson, Director of New School Facilities, handed to the architect; and then to Dr. Call, superintendent of the Board of Education. The envelope of the respondent contained a letter signed by Mr. Jaye Smith, its president, stating:

> Due to the difficulty in determining the price and availability of the three inch roof deck material specified . ., I have submitted my proposal on the basis of a cost of 36 cents per square foot of roof area. I use this figure only as a basis for arriving at a total bid price, and stipulate a change in contract price, either higher or lower as the information becomes available.

The letter was not noticed by anyone present and was not read as a part of the proposed bid in ascertaining the low bidder. The bid as made and read was as follows:

> . . . Gentlemen:
> Having carefully examined the plans, specifications, all documents and addenda entitled: "Physical Education Addition, Kearns Junior High School" Granite School District at 4040 West 5305 South, Kearns, Utah as prepared by ARTHUR K. OLSEN, Architect, 357 East Fifth South, Salt Lake City, Utah, and having examined the site of the proposed construction, and understanding all governing conditions under which the work is to be done, the undersigned proposes to furnish all labor, material, services, utilities, tools, machinery, taxes, insurance and incidentals for the:

BID STRUCTURE:

A. Base Bid—Completion Date August 10, 1973: Sum of *One Hundred Sixty Four Thousand Twenty Two* Dollars ($164,022.00).

*Completion of Work* : If the Undersigned be notified of the acceptance of this proposal within fifteen days after the date hereof, he agrees to execute a contract agreement in the form bound in these specifications for the above work for the above stated compensation, and to guarantee completion of all phases of this work ready for occupancy on or before August 10, 1973 (See Bid Structure). The Liquidated Damages Condition of the "Agreement" form has been considered in making this proposal and will pertain to whichever time is selected in the bid structure.

*Bond* : The Undersigned agrees, if awarded the Contract, to furnish and deliver to the Board bonds subject to the approval of the Board of Education on the bond forms bound in these specifica-

tions, each in the amount equal to 100 percent of the contract sum. The proposed surety company is *United Pacific Insurance . . ..*

The respondent allowed his bid to be read and accepted by the Board of Education without calling attention to the fact that the amount of his bid was not to be the sum which he expected to receive if his bid price was the low figure ($164,022.00). Had he done so, his bid would not have been considered the lowest bid for no one knew what his ultimate price might be.

The costs of labor and material are always subject to fluctuations, and a contractor who makes a bid takes the risk of a rise in prices and is entitled to the benefits in case of a lowering thereof. As a part of the bid submitted, the respondent made the following paragraphs:

*Agreement*: The Undersigned had read the "Agreement" form thoroughly and hereby agrees with and has included all the costs of all provisions contained therein.

*District Bid Depository*: The Undersigned has abided by the spirit and the letter of the "District Bid Depository" described in the "Addendum to the General Conditions" and "Instructions to Bidders" and the published "Notice to Contractors".

*Errors*: The Undersigned has checked carefully all of the above figures and understands that the Board will not be responsible for any errors or omissions on the part of the Undersigned in making this bid.

*Collusion*: The Undersigned hereby certifies that this bid is genuine and not sham or collusive or made in the interest or in behalf of any person not herein named, and that the Undersigned has not in any manner sought by collusion to secure for himself an advantage over any other bidder.

Two days later Mr. Smith, president of the respondent company, met with the representatives of the school board and they formally signed the contract which provided, among other things,

The Board agrees to pay the Contractor for the said work and materials and for the full performance by the Contractor of all covenants and conditions in the manner and form herein set out for the General Contract, including Plans and Specifications, the sum of One Hundred Sixty Four Thousand Twenty Two ($164,022.) dollars subject to additions and deductions as herein provided, and subject to the provisions of this Agreement.

Nowhere in the contract is there any mention of a contingency in the amount to be paid the contractor. Moreover, by plaintiff's own admission, no mention whatsoever of a contingent bid was made during the meeting in which Mr. Smith signed the contract.

At trial Mr. Smith testified as follows:
Q. On March 8, 1973, was there any discussion at that time with Mr. Davidson as to the contingency in your bid for the roof decking amount?
A. No, there wasn't.
Q. Did you in fact sign the contract on March 8th?
A. Yes.
Q. And did you sign that in the amount of $164,022.00?
A. I signed the contract with that amount written on it.

It was not until approximately six weeks later that Mr. Davidson discovered the existence of the letter. This occurred after Mr. Davidson heard about the possible contingency and checked the bid envelope where he found the note stashed away among the papers contained therein.

 The formal contract signed March 8, 1973, governs the parties hereto; and even if Mr. Smith had his fingers crossed when the bids were opened and read, the signing of the formal contract bound him to construct the addition to the gymnasium according to the plans and specifications for the total sum of $164,022.00, subject to additions and deductions; and there were no additions or deductions agreed to, save one $150 item for striping. The bid submitted was merely an offer to enter into a contract

and when the written contract was agreed to and signed, all prior offers and counter-offers were merged therein.[1]

■ The contract was clear and unambiguous, and the court should not have permitted any evidence of what the intentions of plaintiff were when it made its bid. The material thing is what did the parties intend when they signed the contract? The answer to that is clear—they intended that plaintiff construct the building according to the plans and specifications and for the defendant to pay the sum of $164,022.00.

■ In its memorandum decision, the trial court said, "However, before the work was completed they did learn of the letter, learned of the extra cost, and to now permit the defendant to take advantage of plaintiff's position would be inequitable and would constitute in effect an unjust enrichment to the defendant . . . .."

■ Since when have courts rewritten contracts in order to enhance the profits of one of the parties thereto or to prevent loss to the other? There is no unjust enrichment to one who compels the other party to live up to his agreement.

The judgment of the trial court is reversed except as to the award of $150 made for striping. Costs are awarded to the appellant.

HENRIOD, C. J., and CROCKETT, J., concur.

MAUGHAN, Justice (dissenting):

On appeal is a judgment in an action to recover the cost of certain redwood decking supplied to defendant under a construction agreement. At trial, plaintiff was allowed to amend his complaint to seek recovery of $150 for extra work performed under the agreement. Judgment was rendered for plaintiff. We should affirm, with costs to plaintiff.

In response to public invitation by defendant, plaintiff submitted a bid for the alteration of a gymnasium in a junior high school. The bid for $164,022.00 was sub-mitted with a letter, hereinafter referred to as the contingency letter on March 6, 1973. Plaintiff stated therein:

Due to the difficulty in determining price and availability of the three inch roof deck material specified for the Physical Education addition to Kearns Junior High School, I have submitted my proposal on the basis of a cost of 36 cents per square foot of roof deck area. I use this figure only as a basis for arriving at a total bid price, and stipulate a change in contract price, either higher or lower as the information becomes available.

The bids were opened by a representative of defendant. There was a dispute as to whether the contingency letter was removed at that time; and defendant has vigorously contended it did not have knowledge of the contents of the contingency letter, until four to six weeks later. On the same day, the bids were opened, March 6, 1973, defendant's agent, the Superintendent, recommended plaintiff's bid be accepted; an appropriate motion was made, and defendant accepted plaintiff's bid. On March 8, 1973, a memorandum of this contract was executed by the parties.

The evidence adduced at trial indicated the brand of decking designated, in the plans and specifications, viz., Weyerhaeuser Blue Star and Red Star, was not available, or being manufactured. Consequently, no accurate determination of price could be made at the time of bidding. By a letter dated May 23, 1973, plaintiff informed defendant he had procured the required decking. Plaintiff explained the cost of the decking was $6,610.98; that he had allocated only $3,008 in the bid, leaving a difference of $3,602.98.

His letter concluded:

If you need further information or have questions regarding this matter, please call or write immediately.

Defendant conceded it had knowledge of the contingency letter approximately six weeks after the bid was accepted. Defend-

1. Restatement, Contracts, Sec. 237.

324

ant refused payment of the additional sum on the ground the written agreement had a contract price of $164,022.00.

The matter was tried to the court. Plaintiff offered the contingency letter, defendant objected; asserting the parol evidence rule. The letter was admitted, and the court granted defendant a continuing objection.

The court found the contingency letter to be with plaintiff's bid, at the time defendant's representative opened the letter; and the letter was noticed or should have been noticed in the exercise of reasonable care. It was further found the letter was part of plaintiff's bid, and became part of the contract executed on March 8, 1973. Furthermore, before the work was completed, defendant learned of the letter and the extra cost. Under such circumstances, it would have been inequitable, and have constituted an unjust enrichment if plaintiff were required to bear the cost.

On appeal, defendant contends the court erred in finding the contingency letter became part of the contract. The ground asserted is defendant's representatives were not aware of it; therefore they could not have asserted to its terms.

Restatement, Contracts, Sec. 70, provides:

One who makes a written offer which is accepted, or who manifests acceptance of the terms of a writing which he should reasonably understand to be an offer or proposed contract, is bound by the contract, though ignorant of the terms of the writing or of its proper interpretation.

Defendant fails to distinguish between mutual assent and the manifestation indicating such assent. The latter is what the law requires.[1] If a misunderstanding is owing to the fault of one party, and the other party understands the transaction according to the natural meaning of the words or other acts, both parties are bound by that meaning.[2]

Plaintiff presented his contingency letter with his bid and proceeded to give defendant notice of the adjustment in price in a timely manner. Defendant manifested acceptance of plaintiff's offer. It cannot now negate its assent by asserting it was without knowledge of the terms of the offer—when such lack of knowledge was the product of its own negligence.

A further contention is the court erred in admitting the contingency letter. This on the ground it was barred by the parol evidence rule.

The provision in the agreement executed subsequent to the acceptance of plaintiff's bid, is cited:

The Board agrees to pay the contractor for the said work and materials and for the full performance by the Contractor of all the covenants and conditions in the manner and form herein set out for the General Contract, including Plans and Specifications, the sum of One Hundred Sixty Four Thousand Twenty Two ($164,022.) dollars subject to additions and deductions as herein provided, and subject to the provisions of this Agreement.

. . .

Defendant contends this provision represents the final and complete expression of the agreement of the parties, viz., an integrated contract, the terms of which may not be added or varied by prior written agreements relating thereto.[3]

Whenever a litigant insists that a writing that is before the court is an integration and asks the application of the parol evidence rule, the court must determine *as a question of fact* whether the parties did in fact adopt a particular writing or writings as the final and complete expression of their bargain. In determining the issue of the completeness of the integration in writing, evidence extrinsic to the writing itself is admissible. Parol testimony is admissible to show the cir-

1. See Restatement, Contracts, Sec. 20, Comment a.

2. See Restatement, Contracts, Sec. 501, Comment b.

3. See Restatement, Contracts, Sec. 237.

cumstances under which the agreement was made and the purpose for which the instrument was executed.[4] [Emphasis supplied]

The court after evaluating all the evidence, concerning the transaction found the contingency letter to be part of the bid, and to have become a part of the contract.

It was a question of fact whether the agreement of March 8, 1973 was an integrated contract, viz., had the parties manifested assent not merely to its provisions, but as a final statement of the intentions concerning its substance.[5] The question was found adversely to defendant. There is substantial evidence in the record to sustain the finding.

Finally, defendant assigns as error the permission given to plaintiff allowing amendment of his complaint during the trial, to recover $150 for striping a floor. This work was not included in the contract, but was requested as additional work. Defendant objected to the introduction of evidence establishing this claim on the ground there had been no discovery nor had the Board had the opportunity to look into what work was done.

The work had been set forth in plaintiff's answers to defendant's interrogatories. Plaintiff represented to the court defendant had promised to pay the sum, but had not. A letter in evidence, authorized by defendant's agent, stated there was no objection to the part of the Change Order referring to this work. The amendment was allowed on the ground the claim was not a surprise to defendant.

The relevant provisions of Rule 15(b) state:

. . . If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall grant a continuance, if necessary, to enable the objecting party to meet such evidence.

The action of the trial court when evaluated by the standards set forth in Rule 15(b), does not indicate an abuse of discretion.[6]

WILKINS, J., concurs in the views expressed in the dissenting opinion of Mr. Justice MAUGHAN.

---

4. *Bullfrog Marina, Inc. v. Lentz*, 28 Utah 2d 261, 266, 501 P.2d 266 (1972).

5. See Restatement, Contracts, Sec. 228, Comment a.

6. See *General Insurance Company of America v. Carnicero Dynasty Corporation*, Utah, 545 P.2d 502, 506 (1976).